McAffee *v.* Russell.

MADISON McAFFEE, Auditor, &c., *vs.* E. P. RUSSELL.

The office of superintendent of the penitentiary was created by a law passed 15th of January, 1839, but neither the time of appointment, nor the tenure of office was prescribed by the legislature, until the 15th of February, 1840, it was so amended as to provide that " the superintendent with the other officers of the penitentiary, shall be elected by the legislature, and they shall hold their offices for two years from the time of their election, and until their successors shall be duly qualified; and in the event of death, resignation, or refusal to act of the said superintendent, the vacancy shall be filled by the governor until the meeting of the legislature." Hutch. Code, 985. *Held*, that the term of office of the incumbent by the terms of this act commences with the election, and he holds for two years from that time, and until his successors shall be duly qualified.

There is no definite period fixed at which the election must take place, nor no time appointed at which the official term of the superintendent is to commence, or at which it must end.    The incumbent is entitled to the office for two years from his election, and until his successor is qualified; and should

McAffee *v.* Russell.

the legislature fail to elect a successor, the term of the incumbent might be extended indefinitely, from session to session of the legislature.

This office is not divided or apportioned into periods of two years each, which have a stated beginning and ending; but each incumbent has an interest or an estate in the office, which may continue for two years or a longer period, if not sooner forfeited or abandoned, and if such an event should occur, and the legislature shall proceed to elect a successor, he will be entitled to hold his office for two years, the term prescribed in the statute. *Hughes* v. *Buckingham*, 5 S. & M. 582; *Halfacre* v. *Smith*, 6 How. 682, cited and confirmed.

Where a vacancy occurs in the office of superintendent of the penitentiary by death, resignation, or refusal to act, the statute provides that "the vacancy shall be filled by the governor until the meeting of the legislature." *Held*, that a literal construction of this language, clearly includes any meeting of the legislature, whether at an adjourned, a regular, or a called session.

This act of the legislature was intended to provide for filling the office in the event of a vacancy during the recess or until the meeting of the legislature; and it follows that S.'s tenure in office, held in virtue of the executive appointment, terminated at the session of the legislature convened in October, 1852, and his election at that time entitled him to the office for two years from such election, and until his successor was duly qualified.

On appeal from the circuit court of Hinds county; Hon. John J. Guion, judge.

At a regular session of the legislature for 1852, on the fourth day of February of said year, John Duncan was elected superintendent of the State penitentiary for the term of two years. He soon resigned his office. On the 29th April, 1852, Governor Foote appointed F. L. Swann to fill the office for the unexpired term of John Duncan. At a called session the legislature elected Swann for the term prescribed by law, namely, on the 14th day of October, 1852. On the 13th day of January, 1854, E. P. Russell was elected at the regular session of that year for the lawful term of two years.

Upon his election, Russell demanded the office of Swann; who refused to surrender, Swann claiming it for two years from the 18th October, 1852, Russell for two years from 14th January, 1854, thus clashing from the 14th January, 1854, to the 18th October, 1854.

The question was informally submitted to the appellate judges, who held that Swann was entitled to the office and its

emoluments for two years from his election, the 18th October, 1842, and that Russell will also be entitled to the same office from the time of his election for two years.

F. L. Swann continued in office until the 18th October, 1854, and recovered his salary up to that period. Mr. Russell now claims his salary for the same period, namely, from the 14th January to 18th October, 1854.

The circuit court granted a peremptory mandamus against the auditor, to compel him to issue his warrant in favor of Mr. Russell.

McAffee, the auditor, has already issued his warrant for the amount in favor of Swann. He is now commanded by the circuit court to pay the claim of Russell for the same period of time.

*D. C. Glenn*, attorney-general, for the auditor.

One thing is clear to my mind, and that is, if it was legal to pay Swann, it must be illegal to pay Russell. Two perfect claims on one thing cannot coexist, any more than two bodies can be in one and the same place at the same time.

It is clear, that if Mr. Swann was entitled to a warrant for the period dating from the 14th of January to the 18th of October, 1854, Mr. Russell cannot be entitled for the same period. No sort of construction can make the State liable to pay two men for performing the duties of one office at the same time.

My view has always been, that Mr. Swann was only entitled to hold under his appointment until an election, and when elected held only for the unexpired term. A fair analogy from the act of 1833, I think supports such a view, and our practice sustains. Any other view leads to endless perplexities, and, indeed, practically would place the office of superintendent in the hands of the executive instead of the legislative branch of the government. If this be true, then Mr. Swann was illegally paid, and Mr. Russell is legally entitled.

*T. J. & F. A. R. Wharton*, for appellee.

The election of Swann in September, 1852, at the said called session of the legislature, was palpably illegal and void.

McAffee *v.* Russell.

Russell, the appellee, was duly and legally elected, qualified, and commissioned, and entitled to hold said office and receive the salary affixed to it for the term prescribed by law, two years from the date of his election. The judgment of the court below should be affirmed, unless the appellee has estopped himself from the claim to said salary from January, 1854, to October, 1854, by his agreement aforesaid. He evidently did not consider or urge that said agreement could be so construed.

We maintain that Mr. Swann acquired a vested and an absolute estate in said office, by virtue of his appointment by the governor, for the unexpired term of said Duncan, then having some twenty-two months to run, of which he could not be deprived by any subsequent act of the governor, or any election by the legislature. The language of the statute, Hutch. Code, 985, § 1, in reference to the officers of the penitentiary is, "that they be elected by the legislature by the joint ballot of both houses, in convention, who shall hold their offices for two years from the time of their election, and until their successors be duly elected." Then follows, in the same section, just quoted, the following provision: "In the event of the death, resignation, or refusal to act, of the said superintendent, the vacancy shall be filled by the governor until the meeting of the legislature."

The power of the governor could neither be enlarged or abridged, in making said appointment. It extended over the entire unexpired term. He could not appoint, in the event of a vacancy occurring in either of the cases provided for by law, any one to fill said office for three, or six months, or for any term, longer or shorter, "than the meeting of the legislature."

Equally powerless would be any called session of the legislature, to deprive the party so appointed by the governor, of said office, before the meeting of the legislature. I mean the next regular session. What would follow from the reverse of this proposition? Why, surely, this — that if an extraordinary session of the legislature had been convened within sixty days after Mr. Swann was appointed by the governor, notwithstanding he had been appointed, commissioned, given bond, and taken the oath of office for the unexpired term of Duncan, then hav-

ing twenty-two months to run, that called session could go into an election, elect another whose term would begin from the date of his election, and continue thence for two years, and thus oust Mr. Swann twenty months before the expiration of the time for which ·he had been appointed and commissioned. It would be vastly more plausible to contend that Mr. Swann, under the executive appointment, was entitled to hold the office until January, 1854, when Duncan's term expired, and the appellee was elected; and then that he had the right to hold it for two years, or a full term, from the latter period, under his election in January, 1854. Upon the principle that said called session was invested with the general powers of legislation, as much so as a regular session, and not being restricted by the objects enumerated in the governor's proclamation convening them, or his message directing their attention to particular subjects of legislation, it had the power to anticipate the expiration of the term for which said Swann had been appointed by the governor, and elect him for a full term. Would such a power, for a moment, be countenanced? Where would be the limitation upon it? Why would nôt such a called session equally possess the power to anticipate the expiration of a dozen terms, and elect as many different persons, or the same person for as many different terms. But into that absurdity must the contrary doctrine, from that for which I contend, run. On each of the foregoing grounds Mr. Swann's election was void.

Suppose a called session had commenced within sixty days after Mr. Swann was appointed and commissioned to fill said office, "for and during the unexpired term of Duncan," and that it had elected another person to fill said office, would that person have had the right to oust Swann? Would this sustain an application for a writ of quo warranto or mandamus, in favor of that person for said office, against said Swann? The question admits of but one reply. Your honors would say, without hesitation, Mr. Swann has a vested estate or title in and to said office, for the time he was appointed, namely, the unexpired term of Duncan. Is not the argument just as strong in its application to Mr. Swann, who chanced to be elected at a

called session? Could he, under that election, say that he would yield the office under the executive appointment under which he had been acting for a period of six or seven months, in order to take it for the longer term, two years, under his election? or that he would continue to hold under the executive appointment until the expiration of Duncan's term, and then claim it for a full term under his election by the called session of the legislature?

But there was no vacancy in the office when the called session elected Mr. Swann. For that reason his election was illegal and void. It is conceded by the attorney-general, that when the law says that "the vacancy shall be filled by the governor, until the meeting of the legislature," it means until the meeting of a regular session. Apart from his concession, the proposition cannot be successfully controverted. The governor may convene a dozen called sessions, intermediate two regular sessions. He may order them every ninety days. Will it be pretended that this power of electing superintendents of the penitentiary runs *pari passu* with the authority of the governor to convene extra sessions of the legislature? The terms of the office of superintendent are clearly designed, by the law creating the office, to run with the terms of the legislature, regular terms I mean; for I repeat what I have stated orally, that the law abhors a vacuum as much as nature does.

According to the construction placed on the opinion delivered by your honors, it is inferred that the appellee is entitled to the office from the expiration of two years from Swann's election by the called session, which runs into the term for which appellee was elected some eight or nine months. In other words, that appellee's term would begin in October, 1854, and that he would be authorized to claim the salary for two years from the date of his election. It surely cannot be a correct construction. Your honors never intended to say that he would hold the office and perform its duties for only fourteen or fifteen months, but enjoy its emoluments for twenty-four months. Now a regular term of that office will begin with the next legislature, which meets in January, 1856, but the appellee will then have been actually in it, discharging its duties, only

8*

since October, 1854.   Will his time expire with that session? If so, he will not have held it for "two years from the date of his election," for he only obtained possession of it in October, 1854.   Will he hold it for two years from the date of his induction into office?   If so, it will not expire before October, 1856, and thus the term will continue to expire in October, of odd years, when the legislature is not in session, instead of with each regular session of the legislature, as was clearly intended by the statute.

The attorney-general says that there is no possible ground upon which the claim of the appellee can be denied, and the judgment of the court below reversed, unless it be that the appellee has estopped himself from asserting said claim by his agreement to submit to the informal opinion of your honors, and he evidently did not rely upon that ground.   On the contrary, it was very apparent he considered it no sufficient reason.

We maintain that the agreement for submission and the award were wholly illegal and void.   It was in reference to a matter over which the parties had no right or authority to make the pretended submission.   The submission was void for that reason.   The award is equally void for that and another reason, namely, it excluded altogether the terms, conditions, and subject-matter referred.   The whole controversy arose on the demand of the appellee for the office under his election, and the refusal of the appellant to accede to said demand, on the ground that the time for which the latter was elected in October, 1852, had not expired.   The only question was, whether the appellee was then entitled to have said office.   The question of salary had not arrived, and had not been referred.   It was the present right to the office.   We refer your honors to 1 Com. Dig. 654, title Arbitrament, *passim.*   A doubt was suggested by one of your honors on the argument at bar, as to whether the appellee's election was legal.   All that is conceded by the return on the rule taken.   It is admitted that he was legally elected, commissioned, and qualified.   That question cannot arise.   If it did, I would ask, if it was competent for a called session to anticipate a vacancy, why is it not equally competent for a regular session?

It is said the cases of *Halfacre* v. *Smith*, 6 How. 582, and of *Hughes* v. *Buckingham*, settle this case against the appellee. The first case is a most conclusive authority on our side, as will be seen by the most cursory examination of it. There is not a line or principle in it that can be tortured into an authority against me. It recognizes every principle I have contended for. As far as the case of *Hughes* v. *Buckingham* can apply, it also sanctions the doctrine we have asserted. The reporter's statement of that case is as follows: "Where by statute, the term of office of the clerk of the chancery court, who, by law, was appointed by the chancellor, was limited to four years, and the statute did not prescribe the period of the commencement or termination of the term; when the office being filled, the incumbent will have a right to the office for the full term of four years from the date of his appointment. Where an incumbent of an office, the term of which is fixed by statute, but the period of the commencement and termination of the term is not fixed, resigns, or forfeits the office, before the term is expired, and the office is filled by a new appointment, the new appointee will hold the office for the full term, and not for the unexpired term of the former incumbent." We maintain that in the case before your honors, the statute has prescribed "the period of the commencement or termination of the term." The period for which it may be held, and the beginning and end of that term, are clearly defined in the statute creating the office. Nothing is left to implication or doubt. And this distinguishes it altogether from the case of *Hughes* v. *Buckingham*, which was a contest about an office as to which the statute did not prescribe the period of the commencement or termination of the term. Hence it was that the court held that the incumbent in that case resigning, and " the office being filled by a new appointment, the new appointee held the office for the full term, and not for the unexpired term of the former incumbent." In the case at bar, the term prescribed is " two years from the date of their election, and until their successor is duly elected," in the case of a regular term. And in case of a vacancy, occurring by death, resignation, or refusal to act, the vacancy shall be filled by the governor until the meeting of the

legislature. Now there were periods fixed by law for the meeting of the legislature. The terms of this office were, beyond controversy, designed to be concurrent with the terms or meeting of the legislature. The English language cannot make this plainer. I therefore invite, and earnestly insist upon a full examination of these two cases, not doubting that your honors will agree with me in my construction of them.

Mr. Chief Justice SMITH delivered the opinion of the court.

Elijah P. Russell, the appellee, filed his petition in the circuit court of Hinds county for a writ of mandamus, to compel the auditor of public accounts to issue a warrant in his favor, for an amount alleged to be due him on account of his salary as superintendent of the penitentiary from the 13th of January to the 15th of October, 1854. The defendant answered under a rule of court; and an order was made for a peremptory mandamus against him; from which an appeal was taken to this court.

The facts of the case are as follows: John Duncan was elected superintendent of the penitentiary on the 4th day of February, 1852, at a regular session of the legislature, for the term prescribed by law. Duncan resigned; and on the 29th of April, 1852, Fleming L. Swann was appointed by the governor to fill the vacancy thus occasioned. Swann was commissioned accordingly; and having been qualified, entered upon the discharge of the duties of the office.

The legislature was convened in extraordinary session in 1852, at which, on the 14th of October, Swann was elected to the said office for the term of two years, commencing from the date of the election. He was commissioned accordingly, and continued in possession and in discharge of the duties of the office.

On the 13th day of January, 1854, the appellee was elected at a regular session of the legislature, to the same office, for the time prescribed by law. The appellee was commissioned accordingly, and having been duly qualified, demanded the office of Swann, who refused to surrender, claiming the office in virtue of his said election until the 15th of October, 1854.

A controversy having thus arisen between these parties, the members of this court at their mutual request, informally and unofficially announced their opinion upon · the question involved. They held that Swann was legally elected to the office in question on the 14th of October, 1852, for two years from said date; and consequently that he was entitled to the office and its emoluments until the 15th of October, 1854. Pursuant to the opinion thus expressed, Swann continued in the office, discharged its duties, and received the salary up to the expiration of his term of office; at which time he surrendered to the appellee, who took possession and entered on the discharge of the duties of the office. The appellee claimed to be entitled to the salary from the date of his election to the period when he took possession of the office.

The question, whether the appellee was entitled as alleged in his petition, depends upon the validity of Swann's election at the · called session of the legislature. For if Swann was legally elected to the office for the term of two years commencing from the election, there can · be no pretence for insisting that the appellee could claim the office and its emoluments, notwithstanding his election at the session of the legislature in 1854, until after the expiration of Swann's term. Let us, then, endeavor to ascertain whether the election of Swann was valid or otherwise.

The office of superintendent of the penitentiary was created by the act approved the 15th of February, 1839; but neither the time of the appointment, nor the tenure of the office was prescribed by the legislature. The act approved on the 18th of February, 1840, amendatory of the preceding, provided that the superintendent, with the other officers of the penitentiary, should " be elected by the legislature, by the joint ballot of both houses in convention, who (and) shall hold their offices for two years from the time of their election, and until their successors be duly qualified." It was further provided in the same act, that " in the event of the death, resignation, or refusal to act of the said superintendent, the vacancy shall be filled by the governor until the meeting of the legislature." Hutch. Code, 985.

These are the only provisions of the statute in regard to the

election, and the tenure of the office of superintendent. The tenure of office of the incumbent, by the express language of the act, commences with the election. He holds for two years from the time of his election, and until his successor shall be duly qualified. But there is no definite, fixed time at which the election must take place. It is evident, therefore, that no definite time has been appointed at which the official term in this office is to commence. It is equally certain that no point of time has been designated beyond which the term cannot extend, or at which it must end. The incumbent is entitled to the office, if not sooner forfeited or abandoned, for two years from his election, and until his successor shall be duly qualified. If, therefore, the legislature should fail to elect a successor, the term of the incumbent might be extended indefinitely, from session to session of the legislature. It is very evident that this office is not divided or partitioned into periods of two years each, which have a stated beginning and ending. Each incumbent has an interest or an estate in the office, which may continue for two years, or for a longer period, depending upon the appointment of a successor, or it may be forfeited or abandoned sooner. And if sooner forfeited or abandoned, and the legislature shall proceed to elect a successor, such successor will be entitled to hold the office, not for the unexpired portion of a term, but for the period prescribed in the statute.

This principle was expressly recognized by this court, in the case of *Hughes* v. *Buckingham*, 5 S. & M. 582, in which it was holden that where an incumbent of an office, the term of which is fixed by statute, but the period of the commencement and termination of the term is not fixed, resigns or forfeits the office, and the office is filled by appointment, the appointee will hold not for the unexpired term, but will be entitled to the office for the full term.

The same doctrine had been previously recognized in the case of *Smith* v. *Halfacre*, 6 How. In that case, the effort was to show that the constitution had appointed no period at which the official term of the judges of the circuit was to commence, and consequently that an incumbent who was elected at a special election, which had been ordered by the governor, was

McAffee *v.* Russell.

entitled to hold for the full term prescribed in the constitution. This court held the contrary; but it was fully conceded, that if no time had been fixed at which the term commenced, the result contended for would follow.

But it is contended that there was no vacancy in the office when Swann was elected, and that hence the election was void. It is conceded, if Swann was entitled to the office, in virtue of the executive appointment, until the end of two years from Duncan's election, that the election of Swann was a nullity.

When a vacancy occurs in the office of the superintendent, by the death, resignation, or refusal to act of the incumbent, it is provided that "the vacancy shall be filled by the governor until the meeting of the legislature."

The question arises here, whether reference was had exclusively to the biennial meeting of the legislature at the times stated by law, or to any session, regular or extraordinary, which might take place after a vacancy had occurred and was filled by the governor.

A literal construction of the language employed, clearly includes any meeting of the legislature, whether at an adjourned, called, or regular session. This construction should be adopted, unless from a view of the subject-matter of the provisions, a different intention is manifest.

The legislature which created the office, retained in its own hands the appointing power. But not being always in session, prudence and necessity required that a provision should be made for filling the office in case a vacancy should occur in it, during the recess. This power was conferred upon the governor. It is to be exercised only in the recess, and when the legislature is incapable of exerting it; and hence it seems to be reasonable in itself, and entirely consistent with the spirit of the act, that the office should never remain filled by executive appointment, when the legislature, having assembled, is in a condition to exercise the appointing power.

We have above shown, that no period was fixed at which the official term of the superintendent commences; and that no point of time has been designated at which it must termi-

nate.   The legal consequence of which is, as decided by this court, that when the office has been legally filled by election, the incumbent will hold for two years from the time of the election.   From these premises it necessarily results that the official term expires, whenever the interest or estate in the office of the incumbent is put an end to by death, resignation, or otherwise; that is, whenever the office becomes vacant the term ends.

These considerations render it abundantly evident, in the absence of any specific provision to the contrary, that the legislature did not intend that the appointee by the governor should hold the office for two years from the election of his predecessor; but that the object was to provide for filling the office, in the event of a vacancy, during the recess, or until a meeting of the legislature, when the appointing power could be exercised. It follows, therefore, that Swann's term in the office, held in virtue of the executive appointment, terminated at the session of the legislature convened in 1852, and that his election, then, entitled him to the office for two years.

Objections are urged against this construction of the statute, based upon the supposed injurious consequences which may follow.   It is said that this view of the statute would, in effect, deprive the legislature of the right to elect the superintendent, and in violation of the spirit of the act, confer the appointing power upon the executive.

In our opinion no such consequences can possibly follow. According to the view we have taken of the statute, a party who shall be elected to this office at an adjourned, or called session, will be entitled to hold for the term of two years from the date of his election, and until his successor shall be duly qualified.   Hence if the legislature at the ensuing regular session should not make an election, to take effect from the expiration of his official term, he would be entitled to hold the office until the legislature should again assemble.   The precise result which would follow in case the legislature, at a regular session, should fail to elect a successor to an incumbent who held under an election had at the preceding regular session.   In neither case would the governor have a right to appoint, for the plain

reason that in neither would there be a vacancy in the office occasioned by the death, resignation, or refusal to act of the incumbent.

In addition there is another very obvious reason why a mandamus should not have been awarded in this cause.

The appellee showed, by his petition, that he did not take possession of the office, or enter upon the discharge of the duties, until it was surrendered to him by Swann in October, 1854. If it were fully conceded, therefore, that he was entitled to the office and its emoluments from the date of his election, he would, nevertheless, not have the shadow of a claim against the State for salary for the intervening period from his election to his accession to the office. He had rendered no services, and therefore could found no claim for remuneration. If he was wrongfully kept out of office, it was certainly no fault of the State. He was, therefore, not entitled to remuneration upon the principle of indemnity. The legislature had conferred upon him the office in question; his title was contested, and he was kept out by the incumbent. The courts were open to him for the redress of his injuries; and having failed to pursue the remedies provided by law, he must be left to the consequences of his own neglect.

Let the judgment be reversed and the case dismissed.