STATE OF MISSOURI *ex rel*. ATTORNEY-GENERAL, Relator, *v.* CHRISTIAN CONRADES, Respondent.

1. *Election — St. Louis County Court — Term of office of judge appointed to fill vacancy — Construction of statute.*— Under section 2 of the amendatory. act concerning St. Louis county (Adj. Sess Acts 1863–4, p. 279), the term of office of a judge appointed fill a vacancy in the St. Louis County Court, continued only until the next general election, and not till the next regular election of county judge, as contemplated by the act of January 6, 1860 (Sess. Acts 1859–60, p. 524, § 12).
2. *Elections — Terms "regular" and "general," meaning of.*—When applied to elections, the terms "regular" and "general" are used interchangeably and synonymously.

*Information in the nature of a quo warranto.*

*Johnson*, Attorney-General, and *Voullaire & Neal*, for relator.

*Clover & Knox*, for respondent.

WAGNER, Judge, delivered the opinion of the court.

The attorney-general has filed in this court an information in the nature of a *quo warranto*, the object and nature of which is to oust the defendant Conrades from the office of county judge of St. Louis county, which he now holds and occupies.

The information states that one Benj. Charles was, according to law, elected a judge of the St. Louis County Court, on the first Tuesday next after the first Monday in November, 1863, to serve for the term of six years, and up to the first Monday in August, 1869; that under and by virtue of what is known as the vacating ordinance, said Charles was ousted, but reappointed by the governor to fill out his unexpired term; that on the 22d day of January, 1868, he resigned the office, and on the next day thereafter, viz: the 23d day of January, Charles W. Irwin was appointed and commissioned judge of said County Court in the place and stead of said Charles, and to fill the vacancy according to law.

The information then alleges that Conrades, the defendant, claims to hold said office of judge of the County Court, and to

be the regular and legal successor of Irwin, by virtue of an election held in St. Louis county on the first Tuesday after the first Monday in November, 1868. It is admitted that Conrades was elected at that time, and that he has been regularly commissioned, but the question is whether there was any vacancy existing, and whether any legal election for that office could be held. The difficulty in the case originates out of the fact that the time for holding most of the elections in this State has been changed from August to November.

When the St. Louis County Court was instituted, the time designated for electing the judges was the first Monday in August. According to the statute, the election at which Charles was chosen would have taken place on that day, but the Constitutional Convention, at its session in June, 1863, provided by ordinance that whatever elections of judges or clerks of courts, or other officers, was then fixed by law or by any order of court for the first Monday of August, 1863, should be held on the Tuesday next after the first Monday of November, 1863. (See Journal of Convention, 1863, Drake's amendment, p. 255.) Since that time, by constitutional provision and by statute, all elections of a general character have been fixed in November. But it is contended that, according to the organization of the St. Louis County Court, the time at which the election of its members takes place is not governed by the general law, and that the postponement authorized by the convention in 1863 applied to that year only, and that afterwards the elections should be held in August.

The court is composed of seven judges, elected at different periods. When their terms begin or end, is not an issue in this case. The only question presented by the record is, was Conrades legally elected, or has he been guilty of usurpation of office? By an act of the Legislature, approved January 16, 1860, in relation to the county judges, who were then called county commissioners, it was provided that if any member "shall vacate his office by death, resignation, or otherwise, except by expiration of his term of office, it shall be the duty of the governor of the State to appoint, for the remainder of the term for

which such officer was elected or appointed, a suitable person to perform the duties of such office." (Acts 1859–60, p. 524, § 12.)

Section 12, as above recited, was repealed by an act, approved February 8, 1864, and the following was enacted: "If any officer in St. Louis county, mentioned in the act of which this is amendatory, * * * * shall hereafter vacate his office by death, resignation, or otherwise, except by expiration of his term of office, it shall be the duty of the governor of the State to appoint, until the next regular election, a suitable person to perform the duties of the office." (Adj. Sess. Acts 1863, p. 279.)

By the act of 1859, the governor was invested with full power to appoint, whenever a vacancy occurred, for the remainder of the term. The act of 1864 was a limitation on this power of appointment, and abridged its exercise to the next regular election. It is insisted now that in passing this law the Legislature meant that the executive appointee should continue to hold his office till the next regular election of county judges, and that the act had exclusive reference to that election. But this construction, we think, is founded in misconception, and is not maintainable.

It was the obvious intention to give the people an opportunity to elect this officer at the earliest practicable moment, without incurring the expense of a special election. When applied to elections, the terms "regular" and "general" have been used interchangeably and synonymously. The word "regular" is used in reference to the general election occurring throughout the State. It was employed by the draftsmen of this bill in contradistinction to the election which was held in St. Louis county specially for judges of the County Court.

Irwin, then, could only hold by virtue of the governor's appointment up to the time when a regular or general election was held. At that time it was competent for the people to elect his successor. Conrades, then, received a majority of the votes, was duly commissioned and qualified. It follows, therefore, that he was legally elected, and has been guilty of no usurpation of office.

The writ will be denied. The other judges concur.