## W. J. BAWDEN v. W. C. STEWART.

DISTRICT JUDGESHIP; *Vacancy; Removal from State.* The removal of a District Judge from the state with an intention never to return here to reside, of itself creates a vacancy in the office; and where such vacancy exists more than thirty days before a general election, the vacancy is rightfully filled by an election. (Sec. 11, art. 3, Constitution.)

### *Original Proceedings in Quo Warranto.*

In December 1874, *Bawden* filed in this court his petition in *quo warranto*, as follows:

(*Title.*) "Now comes *W. J. Bawden*, plaintiff, and informs the court and avers, that at the general election held in and for the Sixth Judicial District in November 1871, one M. V. Voss was duly elected Judge of the said Sixth Judicial District for the term of four years, from the second Monday of January 1872; that said M. V. Voss duly qualified as such Judge of said District, and entered upon the duties of said office, and held said office of District Judge from thence until the 21st day of October 1874, when he died; that to fill the vacancy in said office occasioned by reason of the death of said M. V. Voss, the governor of the state of Kansas, on the 7th of November 1874, duly appointed and commissioned this plaintiff as Judge of said Sixth Judicial District, and on the 9th of said November the plaintiff, being so as aforesaid duly appointed and commissioned, took the oath of office as District Judge of said Sixth Judicial District, and thereupon entered upon the duties of his office, and thenceforth acted as such District Judge until the 14th of December 1874, when the defendant *W. C. Stewart*, without any warrant or authority of law, usurped and intruded himself into said office of

District Judge of said Sixth Judicial District, and wholly excluded plaintiff therefrom; that said *W. C. Stewart*, defendant herein, still excluding the plaintiff from his said office, and from the right and power to possess, use and enjoy the same, doth still usurp and intrude into and unlawfully hold and exercise the same, to-wit, at the county of Bourbon in the Sixth Judicial District aforesaid, in contempt of the laws of the state of Kansas and to the great damage of the plaintiff, to-wit, to his damage three thousand dollars.

"Wherefore the plaintiff demands the judgment of this court, that the said defendant has usurped and unlawfully intruded into said office of District Judge of said Sixth Judicial District, and hath unlawfully held and possessed the same from and since his usurpation thereof on said 14th of December 1874, and that he be absolutely ousted and excluded from the said office, its powers, privileges, and franchises for the future, and that the plaintiff have and recover possession of his said office, and that he be restored to its powers, duties, privileges and franchises, and that he have and recover of and from said defendant his said damages so as aforesaid sustained, together with the costs of this action."

To this petition defendant *Stewart* filed an answer as follows:

(*Title.*) "Now comes the defendant and for answer to the petition of said plaintiff denies each and every allegation therein contained.

"II. For further answer to the petition of said plaintiff, said defendant alleges and avers that for more than thirty days prior to the last general election on November 3d 1874, there was a vacancy in the office of Judge of said Sixth Judicial District; that said defendant at said election, by the electors of said district, was duly elected to fill said vacancy, and on the 28th day of November 1874 received from the state board of canvassers of said state his certificate of election therefor, and on the 12th day of December 1874, and before the 14th day of said month, duly qualified for said office, and entered upon his duties as such Judge, and has ever since said time held and discharged the duties of said office, and does now. And said defendant avers that any pretended appointment or commission which the plaintiff may have as Judge of said District was and is without authority of law."

Reply, a general denial, was filed to said second defense. The action was tried at the January Term 1875 of this court.

Most of the testimony was in depositions. It was admitted that Judge Voss had been duly elected and had duly qualified for the term of four years commencing on the second Monday of January 1872; that shortly after the commencement of his term he became ill, and was unable to hold his courts; * that courts had been held usually, for two years or more before his death, by *pro tem.* judges; that he had made several trips to other states, with a view to restore his health, and that he left Fort Scott, the place of his then residence, in May 1874, for California, where he died Oct. 21st, 1874. It was also admitted that *Bawden* had been commissioned by the governor, and had qualified, and had entered upon the duties of his office; and that an election had been held, as alleged in *Stewart's* answer, and that *Stewart* had been duly elected, as claimed, if there was such vacancy as could then be filled by election, and that he had duly qualified, and had taken possession of the office. On the part of plaintiff *Bawden* it was claimed that no election was proper, as there were not thirty days between the date of Judge Voss' decease and the day of the general election; and that Judge Voss at the time of his death was only temporarily absent from the state, and proofs were taken to establish this theory. A transcript from the records of the probate court of Bourbon county, "In the matter of the estate of M. V. Voss deceased," was produced, in which appears the affidavit of John T. Voss, (brother of Judge Voss.) This affidavit was made November 4th 1874, and reads as follows:

(*Title, and Venue.*) "The affidavit of John T. Voss respectfully sheweth, that Martin V. Voss, late of the town of Fort Scott, county of Bourbon, and state of Kansas, departed this life, *while temporarily absent from his residence in this county,* at San Francisco, in the state of California, on the 21st of

[* WHEN Judge Voss was elected, the Sixth District comprised Bourbon and Linn counties. Judge Voss resided in Bourbon. Owing to his illness, and consequent inability to hold courts, Linn county, after doing without courts for a year or more, was detached from the district. In Bourbon county two terms in 1872, four terms in 1873, and two terms in 1874, were held by *pro tem.* judges. In August 1874 a majority of the bar concluded to treat the office of district judge as vacant; so at the time fixed for holding the September Term such majority elected a *pro tem.* judge who at once continued the whole docket until the December Term, and adjourned *sine die.*—REPORTER.]

October 1874, having, as your affiant is informed and believes, duly made and published his last will and testament, in which your petitioner is named as executor, and which he now offers for probate as the law directs; that the said will relates to both real and personal estate; that the said Martin V. Voss was at the time of his death *an inhabitant* of the said county of Bourbon and state of Kansas," etc.

Andrew Voss, the father of Judge Voss, testified as a witness on behalf of plaintiff, as follows:

"I reside in Fort Scott, have lived there seven years. Judge M. V. Voss, late judge of this judicial district, was my son. During my residence in Fort Scott, I have resided with my son, M. V. Voss. The house in which we lived belonged to M. V. Voss. Judge Voss' health began to fail about three years ago, and since that time his health has been gradually failing more or less. About the first of the year 1874 his health began to show signs of failure much faster than before. During the year 1873 he took a notion to travel to find that health which he could not find here. His doctors had told him that it was necessary for him to have a change of climate. This country did not agree with him. He was advised here to go to Colorado, and he went to Denver near the close of the year 1872. He went from Denver to the mountains, to Colorado Springs. He returned home, and he then went to northern New York in the spring of 1873. After remaining in New York several months he came home, having found no relief. He then went to the Hot Springs in Arkansas. He returned home again. After some deliberation, he concluded to go to Santa Barbara, California. He and four or five others started for Santa Barbara on the 12th day of May last, 1874. That was the last trip he made.

"We had several conversations on the subject of where he was going, before he left. He told me this, that he couldn't get the health here that he desired; that he wished to have health, so that he could go on and do business; that that was denied him here, the climate forbid it. * * * He said he would not stay in this climate; that he would leave it this time for good; that he never expected to live in Fort Scott again. He said this—'I may come back and pay you a visit in November, but not to exceed four days at any rate.' * * * I think one very strong idea that prompted him to come back here was *his salary*. I think he would like to have retained his salary. This conversation was about one week before he left.

"I received letters from Judge Voss at different periods, and from different places — from Fort Steele, from Sacramento, and from Santa Barbara, up as late as August, that *he would be home in November*. He said in a kind of round-about way that he might hold court; that he might stay four days. He said he didn't know whether he would be able to hold the court on account of bodily infirmities. He observed that he never intended to put his foot in Fort Scott again, if he could avoid it, because his health and strength would not permit him to continue here. He said that nothing could induce him to make a permanent residence in Fort Scott, but he might return in November and spend three or four days. He said he would like to have *his salary* continue, and would like to hold court, but he was not able to do it. . Judge Voss died at San Francisco, California, on the 21st day of October, 1874. *He was on his way home to Fort Scott.* He wanted to come home to die. His object was to come home to die."

Several other witnesses for plaintiff were called, who testified to conversations with Judge Voss shortly before he left in May 1874, and that Judge V. in such conversations spoke of his going to California as a trip for his health only, and talked of coming back in the fall in time to hold the December term of court. ‚ One witness, C. H. M., produced a letter written by Judge V. to the witness, dated "Santa Barbara, Sept. 15, 1874," in which Judge V. said, "I would like to write up California to you, but as I will be at home in November, by the 20th, when I can tell you so much better, I will omit it. * * * When I left home last spring I told my friends I did not expect to make Fort Scott a permanent residence; that I was going to look up a climate where I could live; that in November I would return, and then sell my property and home, and remove. I have not yet found anything to suit me. * * * I shall determine sometime this fall, after I return home, what I shall do." Another witness, B. J. W., produced a letter from Judge V. to witness, dated Sept. 17th 1874, in which Judge V. says—"I shall go to the north part of the state (California,) and travel there some, and arrive at home in November, and then we will see who is Judge. If traveling around the country to

cure sickness, is to abandon one's residence, I am anxious to know it."

On the part of defendant *Stewart* it was claimed that Judge Voss had left the state permanently, and had abandoned his office. Several witnesses testified to different conversations with Judge Voss shortly before he left home, in which Judge V. stated that he was going away, and "not coming back;" that he would "never be seen back here again," etc. The principal witness for defendant was John T. Voss, who testified as follows:

"I am a brother of the late Judge Voss. I reside at Girard, Kansas. I am forty-four years old. The first I knew of Judge Voss' sickness was in the winter of 1871–1872. When he was here in Fort Scott I was frequently with him, from the time of his sickness until he left Fort Scott. He was for a portion of the time in New York and in Colorado. During this time I was not with him. He made two trips out on the plains, and I did not see him while he was gone out on these trips. He was accustomed to consult with me in relation to his private and official business during the period of which I have spoken. I had frequent conversations with him on the subject of his health during his sickness, from 1871 up to August 20th last, (1874,) at which last-mentioned date I left him at Santa Barbara, California. I know that he left the state of Kansas for the West sometime in May 1874—between the 10th and 15th of May is my recollection. I had conversations with him shortly before his departure on that trip. In those conversations he spoke with reference to his residing in this state in the then future. He said that he was satisfied that the climate of Kansas would kill him, if he remained in it, and he was not going to lie down here, and die, but that he would take a trip overland with a team, himself and others, and would go to Santa Barbara or Los Angeles, and there, from what he had learned and studied of the climate, he would recover his health entirely. Then he would select him some location on the Pacific coast; then, when he found some place where he could have his health, he would like to have me come and go into partnership with him in the practice of the law. He said he didn't want anything said about it; that he was dependent on his salary as judge for his support during his

sickness. He said he was poor, and if it was known that he had left the state with the intention of staying away that he would lose his salary; and that he desired me to see the members of the Fort Scott bar, and ascertain who they would like to hold the court as *pro tem.* judge, and when I ascertained that fact to make an effort to procure that party to hold the court as *pro tem.* judge. He said he very much regretted the situation of things, but his condition of health, as well as his financial condition, seemed to demand that course, and if he had means he would resign before he left.

"This conversation took place shortly before he left for California, from one month to six weeks before, and up to within one week before he started. I was not here the day he left Fort Scott. I didn't see him for about one week before he left here. I was absent in Franklin county. In the conversations I had with him shortly before he left he said he was going to California to look out a situation; that he didn't intend to live here any more; that he wanted me to sell his property, but not advertise it. He said he didn't want it publicly known that he designed leaving the state permanently. That was one reason he gave why he didn't want the property advertised. He said he wanted money from the sale of his property, as his health might linger along bad for years, and that was the only resource he had to get money, if his salary failed him. He said he was telling the people of Fort Scott generally, that he would return in the fall when inquiry or conversation was had on that subject, but that he didn't intend to come back; that he might die if he went, but he was satisfied he would if he remained here; that the reason he didn't want it known, was, that his salary was his only available means of support, and he said it was a question of life and death with him, both financially and physically, and that if he could get through so as to obtain his November salary he hoped by that time to be able to make a living by his own labors.

"I saw Judge Voss on the 27th of July, and was with him up to the 23d of August, when I left him at Santa Barbara. I was with him constantly during all this time. I had correspondence with him from that time up to the 15th of October. The last letter I had from him is here, and is as follows:

'SANTA BARBARA, Oct. 15, 1874.

'JOHN T. VOSS: I have this day drawn for $100 on Merchants National Bank, Fort Scott. See that it is honored for me. I start for home to-day. Am worse. Let nobody know I am worse, and they will think I come back according to promise. M. V. VOSS.'"

24 —14 KAS.

[Witness being asked what he understood by the last sentence of said letter, said:] "I was aware of the fact that he did not design to return, and also of the fact that he had said to many that he expected to return in the fall. I then understood from that sentence that he had made up his mind that he could not live, and that he preferred to return home to die among his friends."

*On cross-examination witness testified as follows:* "From May 1865 until the time of his death in 1874, Judge Voss did not have any other home than Fort Scott, that I am aware of. Before I left him in Santa Barbara in August 1874, he did not state to me that he would be home to hold the December term of court; but he said this to me just before I left, that it was impossible for him to come home, but that he wanted me to say that he would come back in the fall — to say that to the folks here. He said he wanted me to say, that I heard him say that he was coming back in the fall. I think I did tell different persons, substantially, that Judge Voss would be home in the fall to hold the term of court, in September, last, after my return from California.

"I am an attorney-at-law; have practiced law more or less for ten years and upwards. From my conversation with Judge Voss before he left Kansas for California, and while in California, and from all the communications I had from him, I am in doubt as to whether he did or did not become a non-resident of Kansas, and of the Sixth Judicial District. I am the duly-appointed and qualified executor of my brother Judge Voss. I am acting as such. As such executor, on or about the 4th day of November 1874, before the probate judge of Bourbon county, I filed an affidavit in making application for letters testamentary as such executor." [Witness is here shown said affidavit, above quoted, and his attention called to the statements showing Judge V. to be a resident of Bourbon county at the time of his death. Concerning which he testifies:] "I meant by those words that Judge Voss owned a dwelling-house at that time in the city of Fort Scott, and that he was absent from it at that time; and that he was the owner of property in this county; and this fact I assumed determined the question. For myself, I regarded it as immaterial as I regarded the fact alone of his having *property here* sufficient for the purpose of letters testamentary. I did not regard the question of *residence,* on the occasion of making the affidavit, material to proving the will. I do not know whether I am right or wrong in my decision on that

question. As to these words in said affidavit, 'that the said Martin V. Voss was at the time of his death an inhabitant of the county of Bourbon, in the state of Kansas,' I meant that he had been such inhabitant previous to that time, that he was when he made the will; and my recollection is that those words were in the blank form furnished me by the probate judge, and that I copied them, and did not regard them as of very great importance for the purpose of proving the will, and was in doubt as to the fact, and determined it according to my own notion of it. I drew his salary as District Judge, as his executor, up to the 21st day of October 1874. Auditor Wilder wrote to me that there was $116 due up to the 21st of October, and upon furnishing him with a certified copy of my letters testamentary, he would pay me."

The testimony is voluminous, and somewhat conflicting. No briefs were filed. The case was argued orally.

*W. C. Webb,* for plaintiff.

*J. E. McKeighan,* and *E. M. Hulett,* for defendant.

The opinion of the court was delivered by

KINGMAN, C. J.: This is a contest by original proceedings in this court as to who is entitled to the office of district judge of the sixth judicial district. The plaintiff claims by virtue of an executive appointment; the defendant by virtue of an election in November 1874. The sole question presented in the case is this: Did a vacancy exist in the office more than thirty days before the last general election? If such vacancy did exist more than thirty days before such election, then it is conceded by plaintiff that the defendant was rightfully elected and is entitled to retain possession of the office. On the other hand, if such vacancy did not exist more than thirty days before the election, then there could be no lawful election, and the appointment of the plaintiff entitles him to the office. (Sec. 11, art. 3, Constitution.) M. V. Voss was elected judge of said district at the November election 1871, and continued to hold the office until the 12th day of May 1874, and as is claimed by plaintiff until his death on the 21st day of October 1874. The defendant claims that

in May 1874 the office became vacant by reason of the removal of the incumbent from the state. There is no doubt that if he did so remove, with a fixed determination to remain away from the state, that such a removal of itself constituted a vacancy. Judge Voss had been in feeble health for two years or more, and a portion of the time was absent from the state, and sometimes was unable to perform the duties of the office when at home. In May 1874 he finally left this state, and on the 21st of October died in California. Thus all the difficulty that arises in the case is, to know with what intent he left the state — whether with a purpose of returning or not. On this point there was much testimony which it is not our purpose to repeat. A very considerable part of it was what was said by Voss about the time of his departure, and after he was gone; and these statements were so contradictory that the mind would become perplexed by their consideration. To some he said he never would come back. To others he said he would be back in November. Sometimes he said he was done with official action; to others he said he would be back and hold the court in November if his health would permit. These statements, so conflicting, cannot be reconciled. They may readily be explained, and they are by the testimony of his brother, and this is the substance of the explanation: He testifies that his brother when he left never intended to return to reside, but his purpose was to find a climate that would agree with his health, and there remain, but as he was poor, and needed his salary, he would say, and instructed his brother to say, that he would return in the fall and hold the November term of the court, thus holding out the idea that he intended to return, so that no step would be taken to fill the vacancy and deprive him of his salary. With this explanation it is not difficult to weigh and value those expressions of Judge Voss which indicated his purpose to return. They were made with an object other than to show his real intentions. With the morality of this course we have nothing to do. Our object is to ascertain his intentions so far as we can do so from his own declarations and his acts.

It may be asked, why he was not consistent in his declarations that he would return. This may be answered by stating that in most of the instances where he spoke otherwise, save to his relatives, who might be relied on to keep silence, there was some motive to induce a statement of his intentions, or something in his relations to the witness that would naturally lead him to trust him to keep silence. The plaintiff's explanation of these contradictory statements is, that Voss sometimes felt certain that he would not live to return, and at those times would make the statements that he never would return here, or "never *expected* to return." There is some reason in the suggestion, and it is entitled to consideration; but it does not explain many of the statements, such for instance as those made to the companion of his journey of his purposes in life when he found a climate favorable to his health, and those declarations made to his father and brother. Again, there is no testimony that these declarations were made while he was in a desponding mood. We must assume that, as a fact, without proof; and were there no other possible explanation, might be compelled to do so; but cannot in the face of the full and satisfactory explanation offered by the testimony of his brother and of his father. Judge Voss left his district and the state in May 1874, never to return. So far as we can judge from the testimony in this case, it was his intention when he left never to return to the state to reside. The removal, with such an intention, of itself created a vacancy in the office, and such vacancy having existed for more than thirty days before the election, the defendant was rightfully elected to the office, and is entitled to hold it.

This conclusion renders it unnecessary to discuss another point raised by the defendant, and on which no opinion is expressed.

All the Justices concurring.