## TEMPLE BAPTIST CHURCH *v.* GEORGIA TERMINAL CO.

1. The constitution imperatively requires that all cases brought to the Supreme Court shall be heard at the first term, unless continued for providential cause; and that all cases shall be decided at a time not later than the end of the term following that at which they are heard. In order to comply with this constitutional requirement according to its true intent and spirit, it is necessary that the dockets of each term

should be made up in such manner as to fix with definiteness, as nearly as may be, the volume of the business for the term.

2. In the absence of a constitutional provision or a valid statute regulating the method of docketing cases, the term at which they shall be heard is to be determined by the Supreme Court, keeping in view the constitutional requirement referred to in the preceding note.

3. The Supreme Court, from its very origin, has exercised the power to close the docket of the term at some time during the term, and before final adjournment, so far as relates to the entering of cases thereon.

4. The statutes regulating the practice in the Supreme Court, when construed in pari materia, and in the light of the history of the practice of closing the docket, contain nothing which, properly construed, denies this power, but, on the contrary, impliedly recognize the existence of the same.

5. The bill of exceptions and record in the present case having been filed in the office of the clerk of the Supreme Court after the date when the docket of the term had been closed by order of the court, the case must be placed on the docket of the next term.

Submitted July 6,—Decided July 11, 1907.

Motion to docket case to this term.

The Temple Baptist Church filed a petition in equity against The Georgia Terminal Company, praying for an injunction and other relief. After the hearing the judge refused to grant the injunction, and the plaintiff excepted. The record and the bill of exceptions were filed in the office of the clerk of the Supreme Court on July 6, 1907. The Supreme Court had, on June 12, 1907, passed the following order: "It is ordered that the civil docket for the present term be this day closed, and that the criminal docket for said term be closed on Monday, July 1, 1907." On the same date that the record and the bill of exceptions above referred to were filed in the office of the clerk of the Supreme Court, the plaintiff filed a motion in which it was asked that the case be entered upon the docket of the present term for a hearing. The grounds of this motion were, in substance, as follows: The act of 1870, now incorporated in Civil Code, §5558, provides that on the receipt of any fast writ by the clerk he shall place it immediately upon the docket of the circuit to which it belongs, and, at the request of either party, the court shall hear the case without delay and without respect to the order of circuits; the spirit and purpose of the act being to ensure a speedy hearing of such writ. It is contended that the court has no authority to pass an order to prevent or restrict the hearing of such writs, but, on the con-

trary, it is made the duty of the court to. provide for a hearing without delay. The only power given to the court by statute in regard to the making of rules is the authority to make .the hearing more speedy and systematic than the statute provides. The statute enlarges the power of the court for this purpose, but it does not authorize the court to restrict or limit such hearings. It is contemplated by the act, that, so long as the court is in session, it shall hear such writs, and continue to hear the same until adjournment. The present term of· the court will continue for a sufficient time to hear and determine the case; and the parties thereto are willing to make all waivers necessary to secure a hearing. The case involves a vast outlay of money in a public improvement incident to the exercise of the right of eminent domain; affecting the rights of the public at large, as well as the rights of private parties, to a public street in the City of Atlanta. The nature of the case is such that it should be heard at once. The petition was filed to enjoin the closing of a public street by the defendant under an illegal order of the authorities of the City of Atlanta. At the hearing, on June 8, 1907, the judge held that the plaintiff was estopped, and for this reason refused the injunction. This was four days before the passage of the order by the court closing the docket for entering fast writs of error for the present term. When the judgment refusing the injunction was rendered, the plaintiff gave notice of its intention to apply for a writ of error; and an order was granted by the judge, superseding this judgment, to allow the filing of the bill of exceptions. When the bill of exceptions was filed the judge granted an additional supersedeas, suspending the judgment until August 6, 1907. This was done to allow a hearing of the case at the present term. The whole proceeding is in the utmost good faith, and it is the desire of the plaintiff to have its rights determined at once. If the case is not heard at the present term, the defendant will, as soon as the supersedeas has lapsed, proceed to excavate the street; and before a hearing of the case at the next term the excavation will be accomplished and a reversal of the judgment will be of no advantage, and it will be impossible to restore the street. The damage can · not be estimated in money, and the only protection that can benefit the plaintiff is to stop the excavation, and, under the present

conditions, this can only be done by a hearing at the present term. The petition was signed by counsel and verified by affidavit.

*Berner, Smith & Hastings,* for movant.

COBB, P. J. (After stating the facts.) The act establishing the Supreme Court of Georgia divided the State into five supreme judicial districts; and a term of court was held twice in each year in every district. The court sat at two places in each district, except the fifth, where all of its sessions were held at the seat of the government in the City of Milledgeville. In order to carry a case to the Supreme Court it was necessary for the losing party to tender the bill of exceptions to the judge within four days after the trial. When the bill of exceptions was tendered, if true, the judge was required to certify the same. Within ten days thereafter notice was required to be served upon the opposite party or his counsel, and when such bill of exceptions and evidence of service were filed in the office of the clerk of the trial court, it was the duty of that officer to certify and send up to the Supreme Court a complete transcript of the entire record in the case within ten days after he received the original notice with a return of service thereon. Cobb's Dig. 451; 1 *Ga.* VIII, IX. Provision was made by the rules of the court for writs of error, citation, assignments of error on the bill of exceptions, etc. Rule XIX et seq., 1 *Ga.* XVI et seq. The rules of court provided, "All cases returned to this court shall be entered on the bench docket and numbered, on or before the court meets on the first day of the term to which they are respectively returned, and the cases first received by the clerk shall be first entered." Rule VII, 1 *Ga.* XIV. It will be noted that it was by a rule of the court and not by statute that the Supreme Court first determined when the docket should be closed for the entry of cases for the term. The docket was closed on the first day of the term, and records and bills of exceptions thereafter received were docketed to the next term of the court. In 1855 an act was passed requiring the clerk of the Supreme Court to arrange the cases on the docket by circuits, and to give notice, by publication in a newspaper at the place where the court was to be held, of the order in which the circuits were arranged; it being also in this act provided that if a case reached the office of the clerk in time to be entered upon the docket before all the cases from that circuit were heard, the same should be construed as being docketed in

time for that term, and that error might be assigned and issue joined at any time before such case was called. Acts of 1855-6, p. 198. The several separate judicial districts of the State were abolished by the constitution of 1865, and the entire State was, in effect, declared to be one supreme judicial district, and the court was required to sit at the seat of the government at such time in each year as the General Assembly should prescribe. Code of 1868, §4961. In pursuance of this change made by the constitution in the act organizing the Supreme Court, the General Assembly, in 1866, passed an act providing that the sessions of the Supreme Court should be held at Milledgeville on the first Mondays of June and December in each and every year, and that such sessions should be continued until the business before the court should be disposed of. It was also provided that all bills of exceptions should be filed in the office of the clerk of the Supreme Court at least twenty days before the commencement of the term at which the same were to be heard; and bills of exceptions filed within less than twenty days should be docketed for the next succeeding term. Acts 1866, p. 46. The practice prescribed by this act, of making the case returnable to the term which began not less than twenty days from the time that the record or bill of exceptions was filed in the office of the clerk of the Supreme Court, continued until 1890, when the decision in the case of *Logan* v. *W. & A. R. Co.*, 86 *Ga.* 493, was rendered. In that case Mr. Chief Justice Bleckley, after reviewing the various statutes in reference to bringing cases to the Supreme Court, laid down the rule that the return term fixed by law for all ordinary bills of exceptions is the first term which begins after the expiration of thirty days from the filing of such bills of exceptions in the office of the clerk of the trial court. Under this rule the term to which a case was returnable was not fixed by the date on which the record and bill of exceptions reached the office of the clerk of the Supreme Court, but by the date on which the bill of exceptions was filed in the office of the clerk of the trial court. This was a decision by a unanimous court, and was followed in the case of *Bank of Culloden* v. *Bank of Forsyth*, 119 *Ga.* 351, which was also by a unanimous court. By an act approved October 28, 1870, it was provided that if a case had been transmitted in time to reach the clerk of the Supreme Court twenty days before the first day of the term, and should fail

to so reach the clerk, either party, on the first day of the term, if the record had then arrived, might move the court to have it entered and heard in its order at that term, and if the court was satisfied that it was so transmitted in time, and if not so transmitted that it was by reason of some act of the defendant in error to produce delay, the motion should be granted. Acts of 1870, p. 46. On October 28, 1870, the very same day that the act last referred to was approved, another act was approved which provided that bills of exceptions in cases of applications for injunction should be tendered and signed within ten days from the date of the decision, and the opposite party be served within five days, and the clerk of the trial court, within five days from the date of service, was required to make a transcript of the record and transmit the same immediately to the Supreme Court then in session, and if not in session, then to the very next session; and its arrival by the first day of the term, or at any time thereafter during the term, was declared to be sufficient to ensure a hearing. If the record being returned to the court then in session should fail, after due diligence, to arrive in time for hearing before adjournment, then it should stand over until the next term. The clerk of the Supreme Court was required, immediately upon receipt of such case, to place the same upon the docket of the circuit to which it belonged, but, at the request of either party, the Supreme Court was required to hear the case without delay and without respect to the order of circuits, or the order in the circuits, unless some rule for a more speedy and systematic hearing of such cases was adopted in compliance with the spirit of the act, giving them precedence. Acts of 1870, p. 405; Civil Code, § 5558. This court had held that neither the granting of an ex parte application for an injunction at chambers, nor the dissolution of an injunction so granted, was such judgment, decision, or decree of the judge, heard at chambers, as to authorize a writ of error to this court while the case was pending in the trial court. *Johnson v. Stewart,* 40 *Ga.* 167; *Nacoochee Mining Co.* v. *Davis,* 40 *Ga.* 309. These decisions were rendered in 1869, and the act of 1870 was evidently passed by the General Assembly to remedy the defect then existing in the law with reference to the hearing of such applications by the Supreme Court. The effect of this act was, so far as applications for injunction were concerned, to allow a party

to the case in the trial court to bring under review by the Supreme Court a mere interlocutory decision of the judge. This was not permissible under the original act establishing the Supreme Court, which founded the jurisdiction of the Supreme Court upon the fact that the case had been finally disposed of in the trial court. This act brings into the practice what is now commonly known as the fast writ of error; originally applicable only in cases of applications for injunction, but subsequently extended to a large class of cases. See Civil Code, §5540; *Gordon* v. *Gordon,* 109 *Ga.* 262. In 1877 an act was passed providing that no case should be dismissed by the Supreme Court, or the hearing thereof postponed, by reason of the failure of the clerk of the trial court to transmit the record and the bill of exceptions to the clerk of the Supreme Court, provided the bill of exceptions and record reached the office of the clerk of the Supreme Court before arguments on the circuit to which it belonged had been concluded; and when a case so reached the office of the clerk it was his duty to enter it on the docket of cases for the circuit, and the case was then to be heard at the term to which it should have been returned "after all of the cases on the entire docket for that term have been heard." This act provides also, that if the bill of exceptions and record do not reach the office of the clerk of the Supreme Court until after the arguments on the circuit have been concluded, it shall be docketed to the next term, and then heard with the cases from the circuit. Acts 1877, p. 99; Civil Code, §5571. The latter part of this act, providing for the docketing of delayed cases reaching the court after the circuit to which they belong had been passed, was declared unconstitutional, for the reason that the case was returnable to the preceding term, and, under the constitution, the General Assembly had no authority to make it returnable to the next term. *Davis* v. *Bennett,* 72 *Ga.* 762. In 1880 an act was passed which provided that no writ of error should be dismissed on any ground which could be removed during the term to which the writ was returnable, and making it the duty of the Supreme Court "to give such time during said term, even to the end of the same, as may be necessary to remove said ground if it can be removed during said term." Acts 1880-1, p. 123. In the case of *Davis* v. *Bennett,* supra, the case was called for argument on April 25, 1884. That was the last day for argument during the term. The case was

transmitted too late for a hearing on the circuit to which it belonged. A diminution of the record was suggested, and a motion to dismiss was made. The record was defective, and time was asked, under the act above referred to, to complete the record. In the opinion delivered on the following day the court says: "By the act of 1880, Code, §4272 (c), no writ of error can be dismissed on any ground which can be removed during the term to which it is returnable, even to the end of it. This can not be removed. The end of the term is here to-day." The writ of error was dismissed on that day, notwithstanding the court, according to the minutes, continued in session until June 10, consulting and deciding cases which had been argued prior to April 25. This was a distinct ruling by the court to the effect that the words "end of the term," in the act of 1880, were to be properly construed, as to remedying defects in the record, as being the last day on which argument was to be heard during that term. The court must necessarily have drawn a distinction between the "end of the term" within the meaning of the act providing for remedying defects in the record and the "final adjournment of the term," which would follow thereafter at such time as the court, in its discretion, should fix.

It appears from the foregoing history of the practice in this court that at its origin it fixed, by rule, the time that the docket should be made up and closed for the term. The General Assembly thereafter saw fit to regulate the matter by providing that certain cases should be treated as of the term, although not within the operation of this rule; that is, cases arriving after the first day of the term but before arguments on the circuit to which they belonged had been finished. The General Assembly recognized, even by the passage of this act, that there must be some way to fix the business of the term and ascertain the time when the docketing of cases should stop. The original rule provided that the docketing of cases should stop on the first day of the term. The General Assembly, recognizing that there must be some rule in reference to this matter, simply provided that cases reaching the court during the term might be added to the docket of that term, provided arguments on the circuit had not been concluded when the bill of exceptions and record were filed in the clerk's office. The act of 1870, in reference to applications for injunction, brought into existence a class of cases before unknown to the practice of the

court; that is, bills of exceptions and records that were being filed from time to time during the term, subject to be disposed of at the term when filed. The whole policy of the act was to provide speedy hearings for these cases; but there was nothing in the act, construing the language in the light of the past history of the court, which undertook to take away from the court the right to fix a docket of cases for the term and to provide when such docket should be no longer open for the entry of cases. So long as the docket was open for the entry of cases, cases within the operation of the act of 1870 were to be expedited; but there is nothing to indicate that it was the purpose of the General Assembly to deprive the court of the power to fix a time for closing the docket of the term, or to require the court to hold the docket open until the very day of final adjournment, in order to speed any case or class of cases. The court, as it was constituted at the time of the passage of this act, construed the act as having no effect whatever upon the power of the court to fix the time for closing the docket of the term, and the practice originated at that time, when Mr. Chief Justice Warner was the presiding officer of the court, to close the docket for the entry of cases when the last case, in its regular order, was called. From that time no other cases were entered on the docket, and the court then proceeded to hear and determine those cases which had been passed to the heel of the entire docket. The formal manner in which the able and venerable Chief Justice actually closed the book and gave instructions to the clerk to make no further entry of cases thereon during the term, is in the recollection of some of those still connected with the court in different capacities. In his formal and solemn way he would close the lids of the book, lay his hand upon the same, remark to the clerk that the docket of the term is now closed, and then, with equal formality and solemnity, he would reopen the book and proceed to call the cases which had been passed to the heel of the entire docket. This was the construction of the law by the court as it was then constituted, and of the meaning to be given to the act of 1870 in this particular. And this court, though it has changed often in personnel, followed the practice thus instituted without variation until 1891, when the act providing for the speedy hearing of criminal cases became the law. Acts 1890-1, p. 180. During this period Mr. Chief Justice Jackson and Mr.

Chief Justice Bleckley were the presiding officers of the court, and the court, though differently constituted as to associate justices, followed without hesitation and without doubt the practice instituted almost simultaneously with the passage of the act of 1870. After criminal cases were put in the class of fast writs of error the court, on January 18, 1892, passed a rule providing for the speedy hearing of such cases, and in the rule recognized that the court had authority to close the docket as to the entry of such cases, and provided for the disposition of cases which reached the court during the term but too late to be docketed for the term then in session. On January 21, 1895, this rule was amended, and the right to close the docket was again distinctly recognized by the court. On February 15, 1898, there appears upon the minutes an order directing the docket closed after a given date, so far as the entry of criminal cases was concerned. While this is the first formal order appearing on the minutes, an examination into the manner in which the court dealt with criminal cases from the date of the passage of the act of 1891 evidences the fact that oral orders must have been made in reference to the disposition of such cases; for it distinctly appears that records in such cases arriving during the term were docketed to the next term of the court. When the court was reorganized in 1897, the right of the court to close the docket was recognized in the rules then adopted; the language of the rule being, "Criminal cases filed after the docket of the term has been closed will be heard at the next term in advance of all other business and in the order of their filing." Rule 22, 97 *Ga.* XII. This rule was amended in February, 1900, and the following appears in the amended rule: "Unless otherwise specially ordered, the criminal docket for each October term will stand closed on the last Saturday but one before the third Monday in the month of February following the beginning of such term. The criminal docket of each March term will be closed by special order." Under the recent rules of the Supreme Court, adopted January 14, 1907, the authority of the court to close the criminal docket by special order is distinctly recognized. Rule 27, 126 *Ga.* XII. From necessity the court must have the authority to close the docket, and thus fix a limit to the business of the term. Otherwise it would be impracticable, if not impossible, to dispose of the business of the court according to the true intent and spirit of the

constitution and the laws. When the time for adjournment of the term arrives, the court loses jurisdiction of all cases heard at the preceding term, and affirmances by operation of law result. If the power exists, then the time when the docket shall be closed must necessarily be left to the discretion of the court. According to the practice instituted by Mr. Chief Justice Warner and his associates, this time was fixed when the last case on the regular call of the docket had been argued. When criminal cases were required to be given speedy hearing, the time of closing the docket as to those cases was fixed in the manner above referred to; that is, by an automatic rule fixing a certain time during one term, and by a special order fixing a given date during another term; it being practicable in the one instance, on account of the terms overlapping, to fix the time automatically, and not being practicable at the March term, which has not, and should never, overlap the October term, to fix the closing of the docket in any other way than by special order designating a particular day for this purpose. On June 22, 1906, an order was passed closing both the civil and criminal dockets of the March term, 1906, on July 7. This appears to be the first time that the civil docket was ever closed by special order; but it had been, as has been shown, the practice to close the criminal docket in this manner for a long time prior thereto. The fast writs that are placed upon the civil docket come to this court in the same way as those which are placed upon the criminal docket. A fast writ of error is a fast writ of error, without reference to the character of the case which the record discloses. If this court has no power to close the civil docket, it is also without authority to close the criminal docket. The time in which either docket is to be closed is a matter within the discretion of the court, if it can be shown that the power to close under any circumstances exists. While the manner in which the docket was closed has varied, there is nothing, either in the practice of the court or the utterances of its members, which brings up one single doubt as to the authority of the court to provide what shall be the business of a given term as to the cases brought under the system inaugurated under the act of 1870. For nearly forty years the court has exercised this power without dissent from any one who has been a member of the court during that long period of its history. During this period the authority of the court has,

up to the present time, been recognized by the acquiescence of the bar in the practice which it has followed. For the first time is the authority of the court in reference to the matter brought in question. This court, and all other courts, will recognize the practice of co-ordinate departments of government, and allow the construction placed by the officers in such departments upon statutes, and even the constitution, to be operative where there is room for construction. The long-continued practice of the executive or the legislative department will be treated as persuasive authority by the courts, and has, in numerous cases been followed, although the individuals composing the court at the time would have doubt as to the true construction if the question were left unaffected by the construction placed upon it by another department of government. If this deference is shown by the courts to the practice of other departments of government, how much more are we authorized to show deference to the practice of our own department, unchallenged by any one who ever was a member of the department, even though there has been no express utterance that such practice is authorized by the constitution and by the laws. There was, under the constitution of 1868, and possibly is under the present constitution, the gravest doubt as to whether the Governor has any authority to approve a bill after the adjournment of the General Assembly. This doubt was voiced by Judge Warner in *Solomon* v. *Commissioners, 41 Ga.* 157, but the right of the Governor was recognized solely for the reason that the past history of the State showed the practice of the Governor to take five days after the adjournment of the General Assembly for the revision of bills; and this practice of the executive department of the government was followed by the courts notwithstanding the doubt as to the true interpretation of the constitution. Even if we should allow ourselves to settle into a condition of doubt as to the right of the court to close its docket for the term, we would not only be authorized, but we would be almost constrained, to follow in the footsteps of our predecessors and continue the practice which was in existence so long and which has been sanctified by the reputation and character of our predecessors who inaugurated as well as those who have followed it without hestitation or misgiving.

Let us for a moment consider what would be the consequences if this power did not exist and were not exercised. The court

would be compelled to postpone its final adjournment until all of the cases of the preceding term have been decided. Since the docket was closed, on June 12, fourteen cases brought to this court by fast writs of error have reached the clerk's office, including the one now under consideration. If the docket is reopened and this case placed thereon, the other cases must be given the same direction. Other cases are being almost daily received. There are now to be disposed of, by this court, more than sixty cases which the constitution imperatively declares shall be decided during the present term; and then there are more than one hundred and seventy cases of the present term, many of them brought to this court on fast writs of error, which are entitled to consideration at the earliest possible moment. If the power to close the docket does not exist, not only the cases now in the clerk's office must be heard, but all others that reach there between now and the first Monday in October. It is impracticable to dispose of the business of the court under the constitutional requirement, unless the business of the term can be fixed in some way which is reasonable and just and proper to the litigants whose cases are before the court and the judges who have imposed upon them, under their oaths, the duty of deciding them. If the docket is not closed, on the first and third Mondays in July, August, and September the court must, under the rules, hear all fast writs of error as they are received from day to day by the clerk. It is not reasonable, it is not just, it is not practicable for the court to transact its business unless it has the power which it has exercised. If there is no authority in the court to close the docket for the entering of cases, then it is not only impracticable but it is impossible to carry into effect the provisions of the act of 1877, as contained in the Civil Code, § 5571. This section relates to delayed cases, and it is provided that such cases shall be heard "after all of the cases on the entire docket for that term have been heard." As long as cases can be entered on the docket for the term these delayed cases are not subject to call for argument; and if the docket must remain open until the day of the final adjournment, there will be no time for the hearing of the delayed cases. If the docket can not be closed prior to the date of final adjournment, any case entered thereon before final adjournment is a case on the docket for that term, and the delayed cases must await the hearing of all such

cases. Not only must the delayed cases await the last day of the term, but the last moment of the last day. This act indicates, by the strongest implication, that the legislature contemplated that the court should exercise the power which it has always exercised from the date of its origin and fix reasonable rules and regulations as to the docket of the term, and the business to be disposed of thereon. The law authorizes it to exercise this power. As authority for this statement we simply cite the name of every Chief Justice and every Associate of this court who has presided here from 1870 down to the present time; and, as highly persuasive authority, we call attention to the unbroken acquiescence of the bar during that long period of time. When in 1906 the General Assembly proposed an amendment to the constitution creating the Court of Appeals, it inserted in this amendment this language: "All writs of error in the Court of Appeals, when received by its clerk during the term of a court and before the docket of the term is by order of the court closed, shall be entered thereon, and when received at any other time shall be entered on the docket of the next term, and they shall stand for hearing at the term for which they are so entered, under such rules as the court may prescribe, until otherwise provided by law." Acts 1906, p. 26; 126 *Ga.* XVIII, XIX. The language of this amendment is in entire consonance with the long-continued practice of the Supreme Court. It is reasonable to presume that the General Assembly, in using the language above quoted in the amendment to the constitution, intended to approve the practice of the Supreme Court in reference to closing its docket, and make it a part of the law governing the Court of Appeals. A casual reading of the amendment will indicate that the purpose of the General Assembly was to have the Court of Appeals, as nearly as may be, a court of last resort, for cases within its jurisdiction, of the same character as the Supreme Court. It not only made the provisions of the constitution and the statutes relating to the Supreme Court applicable to that court, but in this instance expressly conferred upon that court the power which the General Assembly knew had always been exercised by the Supreme Court practically during its entire history.

We recognize the importance of the case involved in this ruling. We also recognize the importance of all the other cases. We do not know what is in these other records. But every case which

reaches this court is an important case to the litigants, and this case will not be the first by which an injury may have resulted from the fact that the docket has been closed and a delay in the hearing brought about. While we regret that the administration of the law is such that great injustice sometimes results from following established procedure, it is far better that established procedure should exist and the individual sustain loss as a consequence thereof than that chaos should prevail in the administration of the law and many suffer in consequence thereof. The motion to docket the case at the present term must be overruled.

*All the Justices concur.*