## J. H. WENDORFF, *Plaintiff*, v. WILLIAM DILL, *Defendant*.

### No. 17,407.

#### SYLLABUS BY THE COURT.

ELECTIONS—*District Judge*—"*Regular Election*"—*Tenure of Office of Appointee.* An election at which judges of the district court are to be chosen for a full term in any of the judicial districts of the state is, as to that office in every district, a "regular election" within the meaning of the constitutional provision that "in case of vacancy in any judicial office, it shall be filled by appointment of the governor until the next regular election that shall occur more than thirty days after such vacancy shall have happened." (Const. art. 3, § 11.)

Original proceeding in mandamus. Opinion filed January 7, 1911. (See, also, *ante*, p. 629.) Judgment for the plaintiff.

*L. S. Ferry, T. F. Doran,* and *C. A. Magaw,* for the plaintiff.

*F. B. Dawes,* and *R. C. Miller,* for the defendant.

The opinion of the court was delivered by

MASON, J.: In November, 1908, James H. Gillpatrick was elected judge of the district court of Leavenworth county, constituting the first judicial district, for the full term of four years. In October, 1909, he resigned, and William Dill was appointed to fill the

vacancy. At the election of November, 1910, candidates for the place were voted for, J. H. Wendorff receiving a majority of the votes. He brings action in this court for the possession of the office. The question involved is whether the title of Judge Dill under the appointment lasts until the election of November, 1912, or expired with the qualification of a successor elected in 1910. The decision depends upon the meaning of the phrase "next regular election" in the provision of the constitution (art. 3, § 11) that "in case of vacancy in any judicial office, it shall be filled by appointment of the governor until the next regular election that shall occur more than thirty days after such vacancy shall have happened."

Originally there was room for the contention that "regular" was used merely in distinction from "special," and designated any election, held under the general law, that provided machinery for receiving and canvassing votes for the office involved. However, in *McIntyre v. Iliff*, 64 Kan. 747, its meaning was restricted to "the next election regularly held conformable to law at which the particular class of judicial officers in question is to be chosen." (p. 750.) The defendant maintains that for the purposes of applying this rule the class of officers to which he belongs does not include judges of all the district courts in the state, but only those normally elected at the same time. The constitution (art. 3, §§ 5, 18) created five judicial districts, the judges of which were to be elected in 1860 and quadrennially thereafter. As each new district was formed the regular term of office of its judge was usually made to begin in January after the ensuing general election. (*The State, ex rel. Goodin, v. Thoman,* 10 Kan. 191; *Peters v. Board of State Canvassers,* 17 Kan. 365; *Smith v. Holt,* 24 Kan. 771.) In 1902 general elections in the odd-numbered years were abolished (Const. art. 4, § 2), and since then a part of the district judges of the state have been chosen at each biennial election.

Therefore, by reason of the difference in the time of their selection, it may be said that in a sense there are now two classes of district judges, and as the first district was created by the constitution its judge belongs in the class with those ordinarily to be chosen in 1912. In *The State v. Holcomb,* ante, p. 256, where the tenure of the appointee to a newly created judgeship was discussed, the court said that his office "should be classified with that of the district judges whose successors are to be chosen at the election to be held in November, 1910" (*ante,* p. 260) ; but this language was used with no purpose to suggest that the two groups resulting from this classification were to be regarded as separate classes in the sense in which the term was employed in the McIntyre-Iliff case.

Under similar constitutional and statutory provisions it has in other states been held, in substance, that the words "next regular election" refer to an election at which the very office in question would ordinarily be filled.. (*People of North Carolina ex rel. Cloud v. Wilson,* 72 N. C. 155; *The State of Florida ex rel. v. Ansel B. Philips,* 30 Fla. 579, 591; *State ex rel. McGee v. Gardner,* 3 S. Dak. 553.) Other decisions have a contrary tendency. (*People v. Babcock,* 123 Cal. 307; *State of Missouri ex rel. Attorney-general, relator, v. Conrades,* 45 Mo. 45.) Some of the cases cited, perhaps all of them, might be distinguished from the present one, on the ground of differences in the laws interpreted. We deem it unnecessary to discuss them in detail, because we think the decision here must in any event be controlled by considerations now to be stated.

The words of the constitution may be open to a construction permitting one appointed to a judicial office to hold until the time when an election would regularly have been held to fill the office, if no vacancy had occurred. But to give them such a meaning would be to defeat the very purpose they were obviously designed to accomplish—that is, to further the policy of

filling judicial offices by election rather than by appointment, and to shorten the time for which an appointee may serve. To allow a district judge appointed to fill a vacancy to hold until the election at which that particular office would ordinarily be filled would be much the same as letting him fill out the unexpired term. The interval between the election in November and the taking of the office in January is too small to have been of itself the object of any special solicitude on the part of the framers of the constitution. If it had seemed advisable to allow the appointee to hold until two months from the end of the term it would hardly have been thought worth while to dispossess him before the new term began. The constitution (art. 3, § 2) provided for three members of the supreme court, a chief justice and two associate justices, one to be elected for six years at each biennial election. The convention can scarcely have intended that if a justice died in the first few months of his service the person appointed to fill the vacancy should hold for five years, during which time two elections for state officers should be held without choosing a successor, and then retire two months before the expiration of the regular term.

In the section of the Ohio constitution from which the provision under consideration was taken the expression used was "annual election." (Ohio Const. 1851, art. 4, § 13.) As the provision was originally reported to the Kansas constitutional convention and adopted the phrase was "general election." (Proc. & Deb. Const. Conv., pp. 67, 73.) The change from "annual" to "general" was doubtless occasioned by the fact that justices of the peace were required to be chosen at township elections, to be held in April. The work cited does not disclose at what stage of the proceedings the word "general" was changed to "regular," but the change may be thus accounted for: In the original draft the term "general election" was made

50—83 KAN.

to embrace township elections. (p. 177.) Later, on the recommendation of the committee on phraseology, it was restricted to the annual elections in November. (p. 388.) The November and April elections could not both be covered by either the word "annual" or "general." Some new term was necessary, and "regular" was doubtless adopted without a purpose to change the spirit of the original provision.

From the earliest history of the state down to the present time the practice has been for one appointed district judge to hold under the appointment only until the qualification of a successor chosen at a general election, whether that particular office would ordinarily be filled at that time or not. So where a vacancy has. been created by the death or resignation of a justice of the supreme court who had several years still to serve, at the next election for state officers a successor has been chosen. In several cases in this court it has. been assumed that this established practice was in accordance with the requirements of the constitution. (See the cases cited in *The State v. Holcomb,* ante, p. 256; also, *Bawden v. Stewart,* 14 Kan. 355.)

In view of the history of the constitutional provision,. of its manifest purpose, and of the practical interpretation long placed upon it, we conclude that an election at which judges of the district court are to be chosen for a full term in any of the districts of the state is, as to that office in every district, a "regular election" within the meaning of that expression as there used.

Upon these considerations judgment for the plaintiff has already been rendered. (*Ante,* p. 629.)