## 3813. HAMMOND v. THE STATE.

1. In the construction of general and special acts, the maxim "generalia specialibus non derogant" applies, and a general act will be held to repeal or modify a special act embraced within the terms of the general act only when the provisions of the two acts are clearly repugnant and irreconcilable, or where the provisions of the general act manifest that it was the intention of the legislature to enact a general law on the subject-matter which should be exhaustive and a substitute for every prior general, local, and special law relating to the subject-matter.

2. The general law on the subject of the protection of game in this State, approved August 21, 1911 (Acts 1911, p. 137), was intended by the legislature to be exhaustive of the subject, and was intended to repeal all existing general, special, or local laws on the same subject-matter.

DECIDED NOVEMBER 20, 1911.

Accusation of violation of game law; from city court of Blakely —Judge Rambo. October 28, 1911.

*Hawes, Pottle & Wright,* for plaintiff in error.
*Walter Park, solicitor,* contra.

HILL, C. J.   An accusation in the city court of Blakely charged Ernest Hammond with a violation of the act to prohibit the killing of certain game in Early county, approved August 17, 1911 (Acts 1911, p. 417).   On arraignment the accused made a written motion to quash the accusation, on the ground that it charged no offense against the laws of this State: (1) because the above-mentioned local law is in conflict with article 1, section 4, paragraph 1, of the constitution of Georgia (Code of 1910, § 6391), which prohibits the enactment of a local or special law in any case for which provision has been made by an existing general law, and this local law conflicts with section 586 of the Penal Code of 1910; and (2) because the local law in question has been repealed by the general game law of the State, approved on August 21, 1911 (Acts 1911, p. 137).   The court overruled the motion to quash the accusation, and this judgment is assigned as error.

The local law under which the accusation is framed is entitled "An act to prohibit the killing of doves, partridges, and quail in the county of Early for a period of five years, and for other purposes, and to provide for a penalty for a violation of the same." Section 1 provides that from and after the passage of the act "it shall be unlawful for any person or persons to shoot, kill, trap, ensnare, or destroy in any way, any dove, partridge, or quail, for a period of five years from the passage of this act, in the county of Early, in the State of Georgia."   Section 2 makes a violation of this act a misdemeanor, and prescribes the punishment provided for in section 1039 of the Penal Code of 1895.   Section 3 repeals conflicting laws.   When this local law was passed, the general law on the subject, as contained in section 586 of the Penal Code of 1910, made it a misdemeanor for a person to "shoot, trap, kill, ensnare, net, or destroy, in any manner, any wild turkey, pheasant, partridge or quail, between the fifteenth day of March and the first day of November in each year," or to "kill, shoot, trap, ensnare, net, or in any manner destroy any dove, marsh-hen, or snipe, between the fifteenth day of March and the fifteenth day of July in each year." The accusation in the present case charged that the accused, on the 27th day of October, 1911, in Early county, did unlawfully shoot and kill one dove, in violation of the act of the legislature approved August 17, 1911, prohibiting the shooting of doves and other game birds in Early county from the date of the passage of said act.

The general act of the General Assembly, approved August 21, 1911 (Acts 1911, p. 137), need not be set out in full. It is manifest from the act, considered as a whole, that it was intended to embrace all the law on the subject of the protection of game in this State. The act establishes a department of game and fish for the State, provides a State game and fish commissioner, game wardens, and deputy game wardens, and was clearly intended to cover the whole subject of protection of game in this State, and to fix and prescribe the only rules in respect thereto, and it was also intended by the legislature that it should act as a repeal of all former statutes, either general or local, relating to the same subject-matter, whether they were, in direct words, repugnant to this act or not; and we are clearly of the opinion that this general act, by terms, expressly covers the whole subject-matter of the protection of game in this State. If the first point made by the demurrer to the accusation is well taken, to wit, that this local act for Early county conflicts with the provision of the constitution which prohibits the enactment of a local law where the same subject-matter is covered by a general law, in our opinion the local law would be inoperative, null, and void, as being in conflict with this provision of the constitution, under repeated rulings of the Supreme Court, beginning with the decision in the case of *Papworth* v. *State*, 103 *Ga.* 36 (31 S. E. 402), which has been followed in numerous decisions.

Unquestionably the general act, as contained in section 586 of the Penal Code of 1910, applied to the shooting of the game specified in the special or local act for Early county. But inasmuch as this law, in our opinion, was itself repealed by the general law on the subject, approved August 21, 1911 (Acts 1911, p. 137), the only material question for this court to decide is whether or not the special law for Early county has been repealed by the general law subsequently approved. It is the established rule of construction that the law does not favor a repeal by implication, and that, where there are two or more provisions relating to the same subject-matter, they must, if possible, be construed so as to maintain the integrity of both. 1 Lewis's Sutherland on Statutory Construction (2d ed.), § 27. And it follows that, as a rule, general laws will not impliedly repeal those which are special or local; in other words, that a general statute, without express re-

pealing words, will not repeal by implication the provisions of a former special, local, or particular law which is limited in its application, unless there is something in the general law upon the subject-matter that makes it manifest that the legislature contemplated and intended a repeal; or, to express it otherwise, in the construction of general and special acts, the maxim "generalia specialibus non derogant" applies, and a general act will not be held to repeal or modify a special one embraced within the general terms of the general act, unless the two acts are so repugnant or irreconcilable as to indicate a legislative intent to modify or repeal the other.

But it is manifest that the general act in this instance is a general revision of the whole subject-matter, and was intended by the legislature to be exhaustive as to that subject-matter. Florida *v.* Southern Land & Timber Co., 45 Fla. 374 (33 South. 999); Village of Ridgway *v.* County of Gallatin, 181 Ill. 521 (55 N. E. 146); State *v.* Archibald, 43 Minn. 328 (45 N. W. 606), and many cases there cited. This whole question of construction is summed up in a headnote in the case of *Davis* v. *Dougherty County,* 116 *Ga.* 491 (42 S. E. 764), in the following language: "A general law will not be so construed as to repeal an existing particular or special law, unless it is plainly manifest, from the terms of the general law, that such was the intention of the lawmaking body." These rules of construction apply both to the subject of the repeal of a general law by a subsequent general law, and the repeal of a special or local law by a general law. They are axiomatic, and need no further discussion. It remains only to make an application of these rules to the particular statutes now under consideration.

The local act for Early county prohibits the killing of game birds, therein described, for a period of five years. The general act on the same subject (Acts 1911, p. 140, section 6) fixes the hunting season, and, among other things, provides that "any resident of the State may procure a license to hunt in his residence county upon the payment of the sum of one dollar. License to such resident shall be issued authorizing him to hunt throughout the State upon the payment of three dollars." And it further provides that "license shall be issued to non-residents of the State upon the pay-

ment of the sum of fifteen dollars, which shall authorize such non-resident to hunt throughout the State." The act creates a game warden and deputy game wardens, and prescribes their terms of office and their duties, among which is to grant the licenses provided for by the act. Clearly these provisions of the general act are in irreconcilable conflict with that provision of the local act which prohibits any person, whether with or without license, from killing in Early county, in five years, any of the game birds mentioned in both of the acts. As to this provision the two acts can not stand together, and therefore the general act is paramount and necessarily repeals that provision of the local act. Further, the penalty prescribed is different. But, as before suggested, this general act, establishing the department of game and fish for the State of Georgia, was intended to be exhaustive of the subject-matter, and was manifestly intended by the legislature to repeal all general or special or local laws on the same subject-matter, and, for this additional reason, even if the provisions of the two statutes were not directly repugnant, the local law for Early county was repealed by the general act subsequently passed. The accusation should therefore have been quashed.          *Judgment reversed.*