## STEPHENS *v.* REID.

No. 13079.   December 4, 1939.

Chief Justice Reid and Presiding Justice Atkinson being disqualified, Judges Hardeman and Franklin were designated for this case.

*Monroe Stephens,* pro se.

*A. G. Powell, Max F. Goldstein, J. N. Frazer, B. D. Murphy, Marion Smith, James K. Rankin,* and *Carl N. Davie,* for defendant.

HARDEMAN, Judge.   Monroe Stephens filed an information in the nature of quo warranto against Charles S. Reid, to contest the latter's right to hold the office of Chief Justice of this Court, an office created by the constitution of the State.   Art. VI, sec. II, par. I, VIII (Code, §§ 2-3001, 3008) [1].   Leave to file having been granted, and

[1] Art. VI, sec. II, par. I and VIII, codified as §§ 2-3001 and 2-3008 of the Georgia Code of 1933, are as follows.:

"2-3001.   Supreme Court Justices.   Quorum.   The Supreme Court shall consist of a Chief Justice and five Associate Justices.   A majority of the court shall constitute a quorum."

"2-3008.   The Supreme Court Justices; divisions; election; terms of office; vacancies.   The Supreme Court shall hereafter consist of a Chief Justice and five Associate Justices.   The court shall have power to hear and determine cases when sitting either in a body or in two divisions of three judges each, under such regulations as may be prescribed by the

a rule having been issued, the case was heard by three judges of the superior courts of the Atlanta circuit, on general demurrer. By unanimous decision the demurrer was sustained and the information dismissed. The applicant excepted. The allegations in the information, taken in connection with facts which this court and the court below are required to judicially notice,[2] show the following: Richard Brevard Russell was elected Chief Justice of this court in the regular November election held in 1934, received his commission from the Governor for a term expiring December 31, 1940, qualified by taking the oath of office required by law, and entered upon the performance of his duties. He died on December 3, 1938. Charles S. Reid was appointed by the Governor on December 17, 1938, to fill the vacancy caused by the death of the late Chief Justice, was commissioned for the unexpired term, and from that time continuously has served as the incumbent in that office.

General Assembly. A majority of either division shall constitute a quorum for that division. The Chief Justice and the associate Justices of the Supreme Court shall hereafter be elected by the people at the same time and in the same manner as the Governor and the Statehouse officers are elected except that the first election under this amendment shall be held on the third Wednesday in December, 1896, at which time one associate shall be elected for a full term of six years, to fill the vacancy occurring on January first, 1897, by the expiration of the term of one of the present incumbents, and three additional Associate Justices shall be elected for terms expiring, respectively, January 1st, 1899, to January 1st, 1901, and January 1st, 1903. The persons elected as additional Associate Justices shall, among themselves, determine by lot which of the three last-mentioned terms each shall have, and they shall be commissioned accordingly. After said first election, all terms (except unexpired terms) shall be for six years each. In case of any vacancy which causes an unexpired term, the same shall be filled by executive appointment, and the person appointed by the Governor shall hold his office until the next regular election, and until his successor for the balance of the unexpired term shall have been elected and qualified. The returns of said special election shall be made to the Secretary of State. (Acts 1895, p. 15, ratified Oct. 7th, 1896.)"

[2] Code § 38-112; *Ragland* v. *Barringer*, 41 *Ga.* 114; *Augusta Brokerage Co.* v. *Central of Ga. Ry. Co.*, 121 *Ga.* 48, 54 (48 S. E. 714); *Oglesby* v. *State*, 121 *Ga.* 602 (3) (49 S. E. 706); *Temple Baptist Church* v. *Terminal Co.*, 128 *Ga.* 669, 680 (58 S. E. 157); *Central of Ga. Ry. Co.* v. *Gwynes*, 153 *Ga.* 606 (113 S. E. 183); *Hatton* v. *Johnson*, 157 *Ga.* 313, 325 (121 S. E. 404); *Railey* v. *United Life & Accident Insurance Co.*, 26 *Ga. App.* 269, 272 (106 S. E. 203); *Hall* v. *Simmons*, 54 *Ga. App.* 568, 571 (188 S. E. 597); 23 C. J. 106, 107, note 15; 20 Am. Jur. 49, 67, 99, 104. Allegations in conflict with facts of which the courts take judicial cognizance must

On June 6, 1939, an election was held in the State under an act of the General Assembly, approved February 24, 1937 (Ga. L. 1937, p. 712).[3]

The contentions made by the relator may be stated as follows: The death of Chief Justice Russell created a vacancy in that office;

___

yield to those facts. *Griffin* v. *Augusta & Knoxville R.*, 72 *Ga.* 423; *Bennett* v. *Public-Service Com.*, 160 *Ga.* 189, 192 (127 S. E. 612) ; *Rome Railway & Light Co.* v. *Keel*, 3 *Ga. App.* 769 (2), 773 (60 S. E. 468) ; *Central of Ga. Ry. Co.* v. *Lawley*, 33 *Ga. App.* 375 (3), 376 (126 S. E. 273).

[3] The act of February 24, 1937, in so far as here pertinent, reads as follows:

"An act to create and establish a State-wide general election in addition to those elections now provided for under existing laws, to provide how and when held, to provide for what purposes such general election shall be held; and for other purposes.

"Sec. 1. Creation of June General Election. In addition to the general election created under and by virtue of an act approved August 14, 1914 (Acts 1914, pp. 47-48), there is hereby created and established a State-wide general election to be known as the June general election, which shall be held biennially on Tuesday after the first Monday in June, beginning on the above date in 1937, which election shall be held in the same manner, with the same formality, and in accordance with all rules and regulations in existence in holding the November general election, and which June general election shall be held in every county and every militia district therein in the State for the purposes hereinafter specified in detail in this act.

"Sec. 2. June General Election Designated for Filling Vacancies. The June general election herein created is hereby designated as being the election in which vacancies shall be filled in any and all State and county offices, which vacancies may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election, except that special elections to fill vacancies may still be held under and pursuant to chapter 34-17 of the 1933 Code of Georgia, whenever such special election may be more expedient, and may best serve the interests of the State or any county thereof, by filling any such vacancy at an earlier date than is provided for in this section.

"Sec. 3. Ratification or rejection of Constitutional Amendments and Referendums. At the June general election herein created there shall be submitted to the qualified voters of the State for ratification or rejection any and all constitutional amendments to the Constitution of Georgia, and any and all referendums which may have been enacted and proposed by the General Assembly of Georgia, at any session of such General Assembly since the last November general election, and preceding such June general election, provided that sufficient time between enactment by the General Assembly and approval by the Governor, and the date of holding the June general election exists in which to advertise such constitutional amendment, or amendments, or referendum, as is provided by law."

by the language of the constitution, if the vacancy causes an unexpired term (as, admittedly it did in the instant case), the same shall be filled by executive appointment, and the person so appointed shall hold his office until the next *regular* election, and until his successor for the balance of the unexpired term has been elected and qualified; that as the act of February 24, 1937, created and established a State-wide *general* election to be held in June, 1937, and biennially thereafter, the relator was authorized to become a candidate for the office in question in the election of June, 1939, and having received a plurality of the votes cast for the office of Chief Justice, he was legally elected, and is now entitled to the office. Stated differently, the plaintiff's contention is that the words "next regular election," as used in the clause of the constitution which provides for filling vacancies in the office of Chief Justice and Associate Justices of the Supreme Court, necessarily and always mean the next *general* election in point of time that may be held after the vacancy occurs. It appears from an exhibit attached to the petition that only 1689 votes were cast in the whole State for this office, 814 for Stephens and the remainder for eight other persons, including Reid, for whom four votes were cast. The exhibit further showed that altogether more than 30,000 voters participated in that election, including 30,214 persons who voted in the election of solicitor-general for the Brunswick Circuit. It is not alleged that Reid was a candidate in the June election. The demurrer of the respondent contained four grounds, though only two questions of law are presented by them. The first ground is the usual one, that no cause of action is stated; the second and third are merely elaborations of the first, and add that if the act of February 24, 1937, establishing State-wide general elections to be known as the "June general election," should be construed as providing an election for filling vacancies in the office of Chief Justice of this court, it would be violative of article 6, section 2, paragraphs 4 and 8 of the constitution (Code, §§ 2-3004, 2-3008). The fourth and last ground urges that the court should take judicial cognizance of the fact that no election was held in June, 1939, to fill the unexpired term of the late and lamented Chief Justice Russell. Under our view of the controlling questions of law made by the first ground of the general demurrer, it becomes unnecessary to pass in specific terms upon other grounds.

■■ Of all the States of the American Union, for seventy years after statehood, Georgia alone had a judicial system *without* an appellate court for the correction of errors. The first three constitutions, of 1777, 1789, and 1798, made no provision for any review of judicial decisions, except for the grant of one new trial before a special jury in the county where the action originated. Ten years elapsed after the adoption of an amendment to the constitution of 1798 authorizing the court to be established, before the legislative branch of the government enacted a law to carry the amendment into effect. Ga. L. 1834, p. 66; 1835, p. 49; 1845, p. 18. Since the court was organized in 1845 there have been of force in the State the constitutions of 1861, 1865, 1868, and 1877. Therefore, this court has existed under five different constitutions. Various methods of selection have prevailed under the several constitutions. Originally the court consisted of three judges elected by the legislature for such term of years as were prescribed by law, and they continued in office until their successors were elected and qualified. They were removable by the Governor on the address of two thirds of both branches of the General Assembly, or by impeachment and conviction thereon. Under the constitution of 1861 the Supreme Court consisted of three Judges who should be appointed by the Governor, with the advice and consent of two thirds of the Senate, for such terms of years as should be prescribed by law, and they were to continue in office until their successors should be appointed and qualified. They were removable in the same manner as under the constitution of 1798 as amended in 1835. The constitution of 1865 provided for a court of three Judges who should be elected by the General Assembly for such term of years, not less than six, as should be prescribed by law. The provisions as to how they should be removed were the same as in the constitutions of 1798 and 1861. Article 5 of the constitution of 1868, establishing the judicial department, provided (sec. 9) that the judges of the Supreme and superior courts should be appointed by the Governor. As to method of selection, it is sufficient in this case to consider only the provisions of the present constitution. When this constitution was adopted by the people in 1877, article 6 provided for the judicial system. The judges, designated in that instrument as Justices, were to be elected by the General Assembly of the State every two years beginning with the session in 1880, and the term

of each was fixed for six years in such a manner that the terms of no two Justices should expire at the same time. Art. VI, sec. II, par. IV, contained this language: "Appointments to fill vacancies shall only be for the unexpired term, or until such vacancies are filled by elections, agreeably to the mode pointed out by this constitution." This necessarily meant elections by the General Assembly of the State, as there was no provision at that time for election of the Justices by the people; and art. VI, sec. XII makes this clear. The Governor appointed, but his appointee served only "until the General Assembly shall convene."

By an amendment proposed by the General Assembly of Georgia on December 6, 1895, and ratified at an election held on October 7, 1896, art. VI, sec. II, was amended by adding a new paragraph thereto to be known as paragraph VIII, and this amendment was made effective by an act approved December 17, 1896 (Ga. L. 1895, p. 15; 1896, p. 42). From that time until now the court has consisted of a Chief Justice and five Associate Justices, "elected by the people at the same time and in the same manner as the Governor and the Statehouse officers are elected." The first election under and by the terms of the amendment was held in December, 1896, at which time one Associate Justice was elected for a full term of six years, to fill the vacancy occurring on January 1, 1897, by the expiration of the term of one of the incumbents. Three additional Associate Justices were required to be elected for terms expiring respectively January 1, 1899, January 1, 1901, and January 1, 1903. The additional Justices so elected determined by lot, among themselves, which of the three last-mentioned terms each should have; and they were commissioned accordingly. "After said first election, all terms (except unexpired terms) shall be for six years each. In case of any vacancy which causes an unexpired term, the same shall be filled by executive appointment, and the person appointed by the Governor shall hold his office until the next regular election, and until his successor for the balance of the unexpired term shall have been elected and qualified. The returns of said special election shall be made to the Secretary of State." What is meant by the phrase "next regular election" appearing in the amendment relating to the tenure of office, or "term," of a Chief Justice or Associate Justice who receives from the Governor his appointment to fill a vacancy which causes an unexpired term?

In interpreting an amendment of the constitution, as in the construction of statutes, the purpose of all rules or maxims is to discover the true intent of the law; and to discover that intention resort may be had not only to the language and arrangement of the article, section and paragraph, but also to the object to be secured, and to such extrinsic matters as the circumstances attending its ratification, the sense in which it was understood by contemporaries, and its relation to other parts of the constitution. 12 C. J. 699, §§ 42, 43; Gibbons v. Ogden, 9 Wheat. 1, 188-89 (6 L. ed. 23); Jarrolt v. Mobley, 103 U. S. 580, 585-6 (26 L. ed. 492). It is well known to all of us that the primary object to be secured by the amendment of 1896 was to withdraw the elective power of the Justices from the General Assembly of the State, and to lodge it with the sovereign people, and to increase the number of judges. After the first election provided by that amendment, all terms (except unexpired terms) were fixed for six years each. Those who framed the amendment, because of the change made thereby in the manner of electing the Justices, inserted for filling vacancies a clause consistent with the new method of election. And so it was provided that if a vacancy caused an unexpired term, it should be filled by executive appointment.

But how long should one receiving his appointment at the hands of the Chief Executive continue to serve, where the vacancy thus filled had created an unexpired term? The simple and logical answer was until the next regular election, when a Governor and Statehouse officers would be elected. The conclusion seems irresistible that the regular election thus in the minds of the people should be the same kind of an election as that in which a Chief Justice or an Associate Justice would be elected if no vacancy existed; and that time was fixed by the constitution itself as "the same time . . as the Governor and the Statehouse officers are elected." The words "next regular election," as thus used in the constitution, have not been judicially defined in Georgia; but they have been the subject of judicial construction in other States having constitutions similar to the constitution of Georgia. It is generally held in those States that such a phrase in a constitution, providing for appointments to fill vacancies in judicial offices, means until the next regular election held at the time fixed by law for the filling of the particular class of judicial offices to which the ap-

pointment was made. State ex rel. Watson *v.* Cobb, 2 Kan. 32; Mathews *v.* Shawnee County, 34 Kan. 606 (9 Pac. 765); Ward *v.* Clark, 35 Kan. 315 (10 Pac. 827); McIntyre *v.* Iliff, 64 Kan. 747 (68 Pac. 633); State ex rel. Taggart *v.* Holcomb, 83 Kan. 256 (111 Pac. 188); Wendorff *v.* Dill, 83 Kan. 782 (112 Pac. 588, 50 L. R. A. (N. S.) 359, 363), note State ex rel. Atty-Gen. *v.* Philips, 30 Fla. 579, (11 So. 922); People ex rel. Cloud *v.* Wilson, 72 N. C. 157; State ex rel. McGee *v.* Gardner, 3 S. D. 533 (54 N. W. 606). See also Lynch *v.* Budd, 114 Cal. 168 (45 Pac. 1060); Rodwell *v.* Rowland, 137 N. C. 617 (50 S. E. 319); People ex rel. Murphy *v.* Col, 133 Cal. 334 (64 Pac. 477); Daggett *v.* Collins, 2 Nev. 351; State *v.* Gardner, 3 S. D. 553 (54 N. W. 606); In re Supreme Court Vacancy, Op. of Supreme Court to Governor of South Dakota, 4 S. D. 553 (57 N. W. 496); People ex rel. Murphy *v.* Hardy, 8 Utah, 68 (29 Pac. 1118). Other decisions incline to a contrary view, and hold that any general election throughout the State held conformably to law is within the intent of the legislature or the people, as the language may be found either in a statute or the State constitution. People ex rel. Webster *v.* Babcock, 123 Cal. 307 (55 Pac. 1017); Banton *v.* Wilson, 4 Tex. 400; State ex rel. Atty.-gen. *v.* Conrades, 45 Mo. 45. Interpretation must not be literal or restricted if it will defeat the intention of the people. "It has been said that the letter of the law is its body; the spirit, its soul; and the construction of the former should never be so rigid and technical as to destroy the latter." Dyer *v.* Dyer, 212 N. C. 620 (194 S. E. 278, 280). See also *Gazan* v. *Heery,* 183 *Ga.* 30, 41-42 (187 S. E. 371, 106 A. L. R. 498). Under some circumstances a "regular" election is simply an election which recurs at stated intervals as fixed by law. That is usually the case where the language is used in contradistinction to "special" election, the latter being an election that arises from some exigency or special need outside the usual routine. 9 R. C. L. 978; State ex rel. Stone *v.* Andresen, 110 Or. 1 (222 Pac. 585); Robb *v.* Tacoma, 175 Wash. 580 (28 Pac. 2d, 327, 91 A. L. R. 1010, 1018). Under other circumstances a "regular" election may be synonymous with a "general" election. In a limited or qualified sense, any election to fill a vacancy caused by death or resignation may be thought of as a special election. But the term "special election," as employed in the amendment of 1896, obviously referred only to that "first

election" to be had thereunder, when one of the existing offices was to be filled, and three additional Justices were to be added, by an election by the people.

When the paragraph of the constitution requiring elections of the Chief Justice and of the Associate Justices of this court by the people was adopted by constitutional amendment, and as a corollary of such elections it was thought wise to provide a new method for the filling of vacancies which caused an unexpired term, in our opinion the people thought only of the general State-wide elections which thereafter would be held to choose the members of the court. In our opinion, that is the regular election of which the people spoke in the amendment. *Moore* v. *Smith,* 140 *Ga.* 854 (79 S. E. 1116), involved an amendment to the constitution of this State, to create a new county, which had been submitted to the people. Art. XIII, sec. I, par. I, of the constitution of the State requires that amendments proposed by the General Assembly shall be submitted to the people at the "next general election." An act was approved on August 14, 1912, proposing the amendment. At that time there were three State-wide general elections provided for by the laws of the State, viz., first, elections for county officers on the first Wednesday in January of the years in which, under the constitution and laws of the State, elections should be held to fill such offices; secondly, elections for members of Congress and Presidential electors biennially on Tuesday after the first Monday in November; and lastly, the elections for all other officers of the State on the first Wednesday in October. There being insufficient time to properly publish the proposed amendment in one or more newspapers in each Congressional district at least two months before the time of holding the next general election in October, the amendment was submitted at the November election. This court held that the amendment was legally ratified at the November election, this being a general election within the meaning of the particular provision of the constitution there involved. In that case an entirely different provision of the constitution was under consideration,— different both in language and in purpose from the provision now for consideration. Manifestly the phrase "next regular election" was not employed, as contended, in contradistinction to "primary election." The framers of the provision could not have been so woefully misinformed as to think that an office could be filled by

election in a primary unless otherwise specified, since primaries were and are merely the means of choosing candidates for political parties. As we have pointed out, if no vacancy exists in the office of Chief Justice and the Associate Justices of this court, they are elected by the people at the same time and in the same manner as the Governor and the Statehouse officers are elected. The day of holding such elections shall be the Tuesday after the first Monday in November in the even-numbered years. Code, §§ 34-1301, 34-1302, 40-101, 40-501, 40-901, 40-1401, 40-1601.

■ The act of the General Assembly of Georgia approved February 24, 1937 (Ga. L. 1937, p. 712), established a State-wide general election to be held in June, 1937, and biennially thereafter. That election is regular in the sense that it recurs at stated intervals fixed by law. To that extent it is not a special election, such as one that might be specially ordered to be held under a particular statute, of which due notice in some manner is usually required. Nevertheless it does not follow that the so-called June general election is an election of the kind that the constitution contemplates where vacancies on the Supreme Court for an unexpired term are to be filled by an election. We are confined to the constitutional meaning of the term "next regular election," which the General Assembly could not enlarge, because the constitution itself provides, in reference to these particular offices (art. VI, sec. II, par. IV, Code § 2-3004), that "Appointments to fill vacancies shall only be for the unexpired term or until such vacancies are filled by elections agreeably to the mode pointed out in this constitution." The method pointed out by the constitution is in the succeeding paragraph VIII, which found its way into the constitution under the amendment of 1896. We must, therefore, always come back to the language of that amendment, and faithfully endeavor to ascertain the intention of the people of our State when they ratified it. Our interpretation of the clause "the next regular election" does not mean there can never be an election to fill an unexpired term of the Chief Justice or of an Associate Justice of this court where the vacancy has been filled by executive appointment. The tenure or term of office of the person receiving the appointment terminates when the people speak on that subject in an election held at the same time and in the same manner as the Governor and the Statehouse officers are elected, which, as now fixed by law, is the Tuesday

after the first Monday in November in the even-numbered years. If a vacancy should be created in the office of an Associate Justice, for example, in June of an even-numbered year, and the unexpired term of office in which the vacancy existed continued, let us say, for four and a half years thereafter, the person receiving the executive appointment would serve only until the result of the succeeding November election had been declared, at which election a successor would be named by the people to fill the balance of the unexpired term. This prevents long-term appointments, as the regular elections ·occur biennially, thus in every instance of vacancy affording an early opportunity for choice by the people. If it was thought desirable to hasten such submission to the people, the amendment did provide for prompt submission.

The plaintiff places some emphasis upon art. v. sec. i, par. ix, of the constitution (Code, § 2-2609), which relates exclusively to the Executive Department of the government. The paragraph reads as follows: "The General Assembly shall have power to provide by law for filling unexpired terms·by special elections." It is obvious that the paragraph refers to an election for an unexpired term of the Governor, or other executive officer, and not to Justices of the Supreme Court. The contention has been made that the General Assembly by the act of 1937, in designating the June general election as "being the election in which vacancies shall be filled in any and all·State and county offices," with certain exceptions not material here, has provided by law for filling unexpired terms of the Governor, and therefore of the Chief Justice and Associate Justices of this court; that if the Governor, in case of death or resignation of the incumbent, could be named in such June election, a Chief Justice might be named also. It must be borne in mind that before the act of 1937, by the acts approved August 24, 1872, and July 22, 1879 (Ga. L. 1872, p. 30, 1878-79, p. 173; Code, § 40-102), the General Assembly made provision for filling an unexpired term of a Governor when a vacancy exists. Under that section of the Code, the President of the Senate, or Speaker of the House of Representatives, as the case may be, exercising the executive powers of the government, as provided by the constitution, must issue his proclamation immediately upon his assumption of the duties of the Executive, ordering a special election for Governor to fill the vacancy so occasioned for the unexpired term. It

will not be presumed that the act of 1937, a general law, was intended to repeal an earlier special statute prescribing the method for election of a Governor to fill a vacancy for an unexpired term. General laws will not be so construed as to repeal an existing particular or special law, unless it is plainly manifest from the terms of the general law that such was the intention of the law-making body. *Haywood* v. *Savannah*, 12 *Ga.* 404; *Davis* v. *Dougherty County*, 116 *Ga.* 491 (42 S. E. 764); *Hammond* v. *State*, 10 *Ga. App.* 143 (72 S. E. 937). There is no express reference in the act of 1937 to the acts of 1872 or 1879, and the general repealing clause will not be construed to work a repeal by implication. We conclude, therefore, that the General Assembly of Georgia, in establishing the June general election to be held biennially in the odd-numbered years, was not exercising the power granted to it under art. v, sec. i, par. ix, of the constitution (Code, § 2-2609). Furthermore, as indicated above, the General Assembly could not by the act of 1937 change the meaning of any part of the constitution, and the provision as to "regular election," as contained in that instrument, is controlling.

The decision in *Aycock* v. *State ex rel. Boykin*, 184 *Ga.* 709 (193 S. E. 580), and the opinions in *Mitchell* v. *Pittman*, 184 *Ga.* 877 (194 S. E. 369), do not conflict with the conclusions we have reached in this case. In the *Aycock* case we merely ruled that an election held under the act of 1937 was a general election at which a proposed amendment to the constitution of the State could be ratified. The judgment in the *Pittman* case affirmed the decision of the lower court by operation of law, this court being equally divided in opinion. The opinion of the Justices who favored a reversal shows that their conclusions were influenced by another and different paragraph of the constitution, applicable only to superior court judges (art. vi, sec. iii, par. iii, Code, § 2-3103). Under that paragraph of the constitution, unlike the paragraph which controls the case sub judice, when a vacancy in the office of judge of the superior courts is filled by appointment of the Governor, the tenure of office of the appointee expires on the first day of January "after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected." There is a material difference between the language of that provision and the wording

of the one here under consideration, as should be readily observed on comparison. The general provision as to filling vacancies (Code, § 2-2614) has no application here, for the reason that this case is controlled by the specific provisions, as quoted above, having relation to the particular office.

One who claims to have been elected Chief Justice of the Supreme Court of Georgia in a State-wide general election held in June, 1939, under the act of February 24, 1937 (Ga. L. 1937, p. 712), is not entitled to a commission from the Governor, and could not qualify as Chief Justice, where before such election there existed a vacancy in the office, the unexpired term whereof extended beyond the time when a regular election would be held for judicial officers of that class, and the vacancy had been filled by executive appointment. There may be still other reasons why the relator can not prevail, which it is unnecessary to set forth in this opinion. See *Wood* v. *Arnall,* ante, 362 (2) (6 S. E. 2d). The court below rightly dismissed the information on general demurrer. Therefore the judgment is

*Affirmed. Justices Bell, Jenkins, Grice, and Duckworth and Judges Hardeman and Franklin concur.*